STOKER, Judge.
Plaintiff has appealed that portion of the trial court’s judgment which dismissed his products liability claim against the defendants, Crosman Arms Company, Inc., Cros-man Arms, Inc. and Crosman Airguns, a Coleman Corporation (Crosman). Plaintiff additionally asserts on appeal that the trial court erred in failing to award damages for future loss of wages. None of the other parties in the case have appealed or answered plaintiffs appeal.
FACTS
On August 22, 1975, 11-year-old Taite Damien Daigle was injured when he was struck in the left eye by a BB which discharged from an air gun held by the defendant, Terry Melancon (Melancon), who was 21 years old at the time.
In August of 1976 Elvis Daigle filed suit against Melancon seeking damages for himself and for his minor son. The petition alleged that Melancon intentionally shot young Taite. Melancon answered by way of general denial and made a third party demand against Crosman alleging that the air gun was defective. No further pleadings were filed in the case until May of 1985 after plaintiff hired a new attorney. In plaintiffs first supplemental and amending petition Crosman was made a defendant based on allegations of a defect in design and manufacture of the air gun. However, the allegations of an intentional tort committed by Melancon were maintained. In September of 1986 the plaintiff again amended his petition, deleting the claim against Melancon of an intentional tort and substituting instead a claim of negligence in the careless handling of the air gun.
After a trial on the merits, the trial court found that the gun in question had been tampered with and that there was no proof that this condition existed when it left Crosman’s control. Moreover, the court found that the gun did not discharge as plaintiff alleged, but that it discharged due to some action on the part of Melancon. Accordingly, plaintiff’s claim against Cros-man was dismissed. The court further found that no intentional tort had been proved.
The trial court specifically rejected the only expert testimony of future loss of wages suffered by Taite and awarded damages in the amount of $250,000, plus medical expenses of $6359, together with interest from date of judicial demand against Melancon. Melancon has since been discharged in bankruptcy.
LIABILITY OF CROSMAN
Plaintiff argues on appeal that the trial court erred in failing to find the gun defective based on testimony that the gun had misfired on occasion, that at the time of the incident the gun was simply resting across Melancon’s lap and that plaintiff's expert was able to make the gun misfire. This evidence, plaintiff argues, is overwhelming and compels a finding of a defect.
The trial court’s reasons for denying recovery with regard to any defect in the gun were essentially that the plaintiff failed to meet the criteria for establishing a product defect enunciated in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). More specifically, the gun had been tampered with and was not in such condition when it left the manufacturer.
The testimony of both plaintiff’s and Crosman’s expert witnesses established that under certain conditions the gun could be made to randomly misfire. However, these conditions required a virtual dismantling of the housing which contained the firing mechanism. Both experts testified that parts of the gun were missing and the barrel and housing were loose, but the gun still functioned. Plaintiff’s expert opined *269 that the looseness of the barrel in the housing could cause the gun to misfire if it were twisted. He testified further, however, that if all of the screws were tightened and there was no looseness in the barrel and housing, that the gun would not misfire unless the trigger were touched.
Crosman’s expert testified that the loosened condition of the gun was not the normal state of the gun and that loosening it, as plaintiffs expert did, destroyed the integrity of the dimensions and tolerances of the firing mechanism. He did not doubt that as a result of loosening the parts plaintiffs expert was able to get the gun to misfire even though he could not. The gun as properly manufactured and assembled, he testified, could not fire without someone pulling the trigger. It was his opinion that Melancon unknowingly touched the trigger while pumping the gun.
After review of the record in its entirety, we find no clear error on the part of the trial court in finding no defect in the gun attributable to Crosman.
DAMAGES
The only item of damages appealed by plaintiff is the denial of damages for loss of future wages. Plaintiff maintains that Taite has sustained a loss of future wages as a result of his injury in the range of $280,000 to $374,000. The only expert testimony concerning this loss was provided by plaintiffs expert, Glenn M. Hebert, a rehabilitation specialist. The other testimony concerning Taite’s ability to work came from Taite and Elvis Daigle.
Plaintiff argues that Mr. Hebert’s testimony was unrebutted and there was nothing to discredit his testimony, therefore it should have been accepted by the trial court.
In denying this element of damages, the trial court stated, in its written reasons for judgment, that:
“Glenn M. Hebert, MRC, Rehibilitation [sic] specialist, indicated that Tate [sic] Daigle had loss [sic] 87.43% of the labor market and stated that this translates into the loss of Two to Four ($2-$4) Dollars per hour or a total of Two Hundred Eighty Thousand to Three Hundred Seventy-four Thousand ($280,000-$374,-000) Dollars. Mr. Hebert did not calculate the present value of this sum, which would have been accumulated over a life time [sic].
“There is no question that the plaintiff’s life was severely affected because of this injury. The Court, however, does not accept Mr. Hebert’s evaluation as to the amount of the loss.”
While uncontradicted expert testimony regarding underlying facts may not be lightly disregarded, expert testimony as to the ultimate facts, although uncontra-dicted, is not binding on the court. Morvant v. Smith, 463 So.2d 75 (La.App. 3d Cir.1985).
The trial court did acknowledge the damaging effect of this injury upon Taite, however, it chose not to accept the evaluations submitted by Mr. Hebert in his four-page report without more. The medical evidence presented does not assign any functional disability to Taite as a result of the injury and Dr. Williamson did not place any limitations on Taite due to the injury. Dr. Williamson testified that Taite never complained of headaches to him and that he did not think that the eye would be causing the headaches. He also testified that straining or lifting heavy objects will not make a lot of difference on the eye. Dr. Williamson testified that the surgeries had improved Taite’s prior problems, that he would require lifetime observation and care, but that he can read, drive a car, do the usual tasks that most of us do and the eye problems would not hinder him from holding a gainful job. In sum, Dr. Williamson testified that Taite will never have a “normal eye,” but that with his contact lens and treatment his visual acuity will improve, although he will probably always be very light sensitive and have problems that any contact lens wearer will have.
Our review of the expert testimony reveals an inconsistency between the medical evidence presented and Mr. Hebert’s assessments of Taite’s disability. Clearly, the trial court is not bound by the expert’s *270 ultímate evaluation of the extent of any loss suffered by Taite. Because the trial court did not accept Mr. Hebert’s dollar amount does not mean that the loss was not considered in the lump-sum award of $250,000, as no itemization was made by the trial court. Accordingly, we find no clear error on the part of the trial court in rejecting the dollar amount of Taite’s loss submitted by Mr. Hebert.
For the reasons stated herein, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant.
AFFIRMED.