652 So.2d 1021 (1995)
Dwayne JEFFERY
v.
THIBAUT OIL COMPANY and Ranger Insurance Company.
No. 94-CA-851.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 1995.
Writ Denied May 5, 1995.
*1022 J. Rene Williams, Henderson, Hanemann & Morris, Houma, for appellants Thibaut Oil Co. and Ranger Ins. Co.
Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, for appellee Dwayne Jeffery.
Before KLIEBERT, C.J., and GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Defendants, Thibaut Oil Company and Ranger Insurance Company, appeal from the award of damages in a case involving toxic exposure to gasoline. We affirm.
On December 23, 1992, plaintiff, Dwayne Jeffery, stopped at a service station while driving to work at a supermarket near his home. Plaintiff, a college student at the University of New Orleans, lived in Vacherie, Louisiana. He began pumping gasoline from a hose which ran overhead. While he pumped, the hose broke, spewing gasoline around. When plaintiff looked up at the hoseline, the gas went into his eyes. His clothes and exposed skin were also drenched.
At first, plaintiff ran from the gushing gas. But, concerned that his car would catch fire, he ran back to the passenger side and pushed his car out of the way. There was no water available at the station, so after reporting the incident to the station manager, he left to go home, which was some distance from the station. It was 25-40 minutes before plaintiff was able with water to remove the gas from his skin and eyes. He then went to his job as a receiving clerk.
Following plaintiff's exposure to the gas, he experienced burning and irritation of his eyes and skin. He left work early because his eyes were bothering him. The next day was Christmas, so he waited until the following day to go to the emergency room of Thibodeaux General Hospital. At that time, he was experiencing discharge, irritation and burning in his eyes. There, he was examined and diagnosed with chemical conjunctivitis of the eyes and was given a prescription for eye drops.
Plaintiff continued to experience discomfort and difficulty with his vision. As a result, he was treated by Dr. Quinton Falgoust on one occasion and then by Dr. W. Lee Terrell, an ophthalmologist. Both doctors diagnosed his condition as chemical conjunctivitis and prescribed eye drops and artificial tears. Because of the contraindications of the prescription drops to a family history of high blood pressure, plaintiff was not able to use the prescription drops. Plaintiff also began to experience headaches and emotional difficulties. He was referred to a neurologist for his headaches. Dr. Maria Palmer examined him and determined that the strain of trying to focus his eyes due to the blurred vision and irritation from the conjunctivitis was causing the headaches.
Dr. Chester Scrignar, a psychiatrist, first saw plaintiff in March 1993 for a variety of symptoms. Dr. Scrignar diagnosed plaintiff with post-traumatic stress disorder (PTSD), caused by the gasoline exposure. At the time of trial, plaintiff was still being treated by Dr. Scrignar.
On March 24, 1993, plaintiff filed suit against defendants. A jury trial was held on April 26, 1994. The jury found in favor of *1023 plaintiff and awarded him a total of $600,000. The judgment was itemized as follows:

Past medical expenses.........................$ 3,000
Future medical expenses.......................$ 65,000
Past lost wages...............................$ 1,300
Future lost wages and lost earning capacity...$200,000
Past and future physical pain and suffering,
 emotional and psychological
damage........................................$330,700
 TOTAL..................................$600,000

The trial judge rendered a judgment on May 6, 1994 and amended it on July 25, 1994 to conform with the jury verdict.[1] Defendants filed a Motion For New Trial Or Alternatively For Judgment Notwithstanding the Verdict which was heard and judgment was read and rendered on July 25, 1994 denying the motions. Said judgment was signed on July 29, 1994.
On appeal, defendants assert that there is no evidence to support an award for future medical expenses or impairment of future earnings. Defendants next assert that the general damage award is excessive. Finally, they contend that the trial judge erred in denying the Motion For New Trial Or Alternatively For Judgment Notwithstanding The Verdict.
The evidence of injury in this case came through the testimony of a Ph.D. and three physicians. Dr. Schrager, is a board certified toxicologist, has done consulting work for the Environmental Protection Agency, the Food and Drug Administration and the World Health Organization, among others, on the health effects of chemicals, including cancer-causing agents. He is not a medical doctor, but there are no medical specialties in toxicology. He stated that his specialty is to determine the effects of chemicals on tissue. He is a teacher, consultant and researcher. He stated that gasoline contains a substance which is a fat extractor. When placed in the eye, that substance extracts the fat from the cells of the conjunctive membranes and destroys them. He testified that the injury cannot regenerate and is permanent. He noted that gasoline also contains anti-corrosives, detergents and other chemicals which are irritating to the eye. He stated that rinsing the eye with water only spreads the gasoline, since it does not mix with water. Also, Dr. Schrager stated that the gasoline can also permanently damage the tear ducts, which is likely if there is no improvement to the duct function within six months. Further, he testified that, as a result of plaintiff's exposure to these toxic chemicals, he will contract some type of toxic substance related illness in the future and has a high probability of developing increased reactivity to petrochemicals and related compounds, many of which are found in everyday life (such as perfumes, ink, printing material). He stated that plaintiff has cause to be concerned about these future effects because this sensitivity will dictate where he can work and live and because of the organ damage potential. Dr. Schrager explained that gasoline is absorbed into the skin and enters the bloodstream where it is carried to the internal organs and the brain. He testified that the longer the exposure, the more damage will be caused. He stated that studies show that exposure to gasoline subjects the person to potential liver damage, spleen damage, subtle changes to the central nervous system which do not become apparent for some time, immune system problems and neuropathies (damage to the neurons especially in the extremities). While he could not say which or how many of these conditions plaintiff will likely develop, he was convinced that plaintiff will develop one or more of these because of the length of the gasoline exposure to large areas of his body. Dr. Schrager also noted that the gasoline exposure creates a greater risk of cancer since Benzene is one of its components and has been linked to leukemia. He also stated that the liver problems would manifest with digestive problems, such as diarrhea and nausea, loss of appetite and low energy level.
Dr. Terrel, an ophthalmologist, treated plaintiff on eight occasions. He diagnosed plaintiff as suffering permanent damage to the eye, known as "dry eye syndrome". The condition creates irritability of the eye and photo-sensitivity. Dr. Terrel testified that plaintiff's condition is mild and occurs naturally to all people as they grow older. *1024 However, here the condition was accelerated by the gasoline exposure and is aggravated by the fact that plaintiff is a student who must use his eyes to study and read for long periods of time. The doctor stated that the tear ducts were also affected, but have improved somewhat. Dr. Terrel stated that there is no cure for the condition, but sometimes the condition will clear up with the use of lubricating drops. However, the longer the condition persists, the less likely that it will clear up. Since plaintiff's symptoms have remained consistent, Dr. Terrel believes that the condition is stable. It will neither get better nor worse (other than for normal aging). Dr. Terrel stated that he needn't see plaintiff on a regular basis, but as needed or every couple of years for a follow up. He recommended that plaintiff continue to use the eye drops and/or artificial tears.
Dr. Chester Scrignar, a psychiatrist, testified that plaintiff is suffering from PTSD caused by the stress of having gasoline sprayed over his body and into his eyes. Dr. Scrignar stated that the diagnosis was based on the history, interviews with plaintiff and his mother and the results of two tests. One of the tests shows fifty symptoms, many of which plaintiff exhibited. At the time of trial, some of those were better, improved or gone, while others were the same or worse. Dr. Scrignar stated that if the symptoms continue after thirty days, the patient is diagnosed with PTSD. He explained that PTSD is characterized by intrusive thoughts about the incident, rumination about the incident, flashbacks and bad dreams resulting in anxiety and other symptoms. The patient is retraumatized every time the event is replayed or when the patient is reminded by factors in his/her environment. In this case, every time plaintiff puts drops in his eyes, has problems concentrating or gets a headache, he is reminded of the event. Dr. Scrignar stated that the goal of treatment is to remove plaintiff's focus on the event, although there will always be the memory of the incident. Dr. Scrignar testified that treatment of the condition involves relaxation techniques, cognitive restructuring to decrease focus on the event, desensitization to reminders of the event and sometimes medication. He stated that he had not prescribed medication to plaintiff because of the possible aggravation of the blurring vision, which can be a side effect. However, he was considering medication because of plaintiff's ongoing depression. The tests given by Dr. Scrignar showed that plaintiff suffered eye pain, blurring vision, difficulty concentrating, flashbacks, anxiety, concern about his eyes and for his future working and living arrangements, nightmares, difficulty sleeping and digesting, nausea, sensitivity to light, blurring vision, headaches, hot flushes, dizziness/faintness, feelings of panic, irritability, excessive sweating, personality changes, depression, death thoughts and worry about the long term effects of his injury and exposure. Dr. Scrignar stated that most of the symptoms were improved, but plaintiff was still significantly symptomatic. He further stated that if plaintiff does not get better medically, the prognosis is poor that he will get better psychiatrically. He stated that he was seeing plaintiff once a month, but would like to increase that to once a week for at least one year. If plaintiff is not better then, his chances of getting better are poor. Dr. Scrignar based that conclusion on studies of World War II veterans who suffered the condition which was then known as "shell shock". He stated that two-thirds of those soldiers still have symptoms, even after forty years. Dr. Scrignar stated that the success of the treatment depends upon the personal resources of the patient in coping and whether he has a good social support system.
Dr. Maria Palmer, a neurologist, testified that she examined and tested plaintiff for physical causes of his headaches. Dr. Palmer concluded that the headaches were caused by plaintiff's squinting to see when his vision is blurry or his eyes are painful. He did not have any other neurological problems.

FUTURE MEDICAL EXPENSES
Defendants assert that plaintiff will not require any special future treatment for his eye condition, other than what is ordinarily recommended for the general populace. However, they assert that, if any award is proper, the most that plaintiff should receive is $700 for eye examinations.
*1025 Defendants further assert that plaintiff failed to prove future psychiatric expenses since Dr. Scrignar did not testify as to the length of time he might expect to treat plaintiff. Defendant calculated a period of treatment for two years with once a week $150 visits ($15,600), plus medicine costs of $365 per year, totaling $16,330. Adding this figure to the eye exams, defendants argue that any total future medical award cannot be more than $17,030.
Plaintiff asserts that the jury award is supported by the record. He points out that defendants failed to consider the testimony of Dr. Schrager, that plaintiff will suffer some type of future illness to his spleen, liver or immune system due to the long exposure to the gasoline.
Our review of damage awards is limited to a finding of abuse of the trial court's great discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). Only when the award is beyond the amount that a reasonable trier of fact could assess for the effects of the particular injury on the particular plaintiff under the particular circumstances, should the appellate court increase or decrease the award. Id. at 1261.
In this case, the evidence shows that plaintiff did not simply suffer a dry eye syndrome. He also sustained a moderate to severe PTSD condition and has a high probability of developing a serious physical disease in the future. All of these conditions were related by the experts to the gasoline exposure through the skin, eyes and inhalation of the gas fumes. Both the psychiatric problem and the contraction of a future disease will require medical treatment, including medications, and the dry eye syndrome will require follow-up examinations and the purchase of eye products to alleviate the discomfort. We find, then, that the future medical expenses, while uncertain due to the nature of the emotional problem and disease development, is not so speculative that the jury could not have arrived at a figure to compensate plaintiff. We further find that the amount of $65,000, to compensate plaintiff for future medical expenses, while high, was not an abuse of the jury's discretion.

IMPAIRMENT OF FUTURE EARNING CAPACITY
Defendants next contend that the jury abused its discretion in awarding future lost wages and impairment of future earning capacity. Defendants assert that there was no evidence to support the award. They contend that only Dr. Schrager testified in this regard and he only stated that plaintiff's opportunities were limited if he developed excessive sensitivity to petrochemicals. Defendants assert that this is speculative.
Plaintiff asserts that the award is proper because he not only has a high probability of developing the sensitivity to petrochemicals, but he has had to change his college major from accounting to psychology due to the eye problem. He contends that the dry eye syndrome causes blurriness and pain with intense reading, which is worse when he tries to do calculations.
The evidence shows that plaintiff is a 25 year old, third year college student, who is more than likely going to become extremely sensitive to petrochemicals, many of which exist in daily life. The effect of this is that exposure to those chemicals will cause a greater reaction in plaintiff's system than someone with normal sensitivity. In plaintiff's case, this is compounded by the fact that he lives in an area of numerous chemical plants, which constantly spew forth high levels of petrochemicals into the environment. Thus, there is continual exposure to chemicals from the air. Because of this, his living arrangements and work opportunities and ambitions have changed since they are limited by the threat of another large exposure to chemicals causing an acute reaction. Furthermore, the sensitivity relates to daily substances, such as perfumes, dyes and synthetics, which would affect any type of job that he may be qualified to do. While no one testified to a specific amount of future lost wages, we conclude that the evidence is sufficient to support an award. When you consider the youth of plaintiff and subtract his age from his probable age when he retires, he has many years of work in front of him. When you divide those work years into the $200,000 award, the yearly amount is probably less than $5000. Thus, under the facts of *1026 this case, we find that the jury did not abuse its discretion in awarding the plaintiff $200,000 for future lost wages and loss of earning capacity.

GENERAL DAMAGES
Defendants assert that the general damage award is grossly excessive because plaintiff only proved a mild case of dry eye syndrome and PTSD, neither of which merits an award of over $300,000. They cite several eye cases (none with just dry eye syndrome) which involved more serious residual effects with judgments ranging from $30,000 to $250,000.[2] They also cite cases involving PTSD.[3] In one of the cases, Weaver v. Siegling, 569 So.2d 97 (La.App. 4th Cir.1990) [cerebral concussion, lacerations, soft tissue injuries and PTDS$100,000], the appellate court reduced a judgment for $150,000, but noted that the plaintiff suffered a post-concussion syndrome, a separate medical condition from the PTSD. Plaintiff also suffered cervical and lumbar strains and had a 10-15% permanent disability, as well as PTSD with secondary depression. Here, defendants assert that plaintiff has no permanent vision impairment, no disability and a case of dry eye syndrome so mild it was not confirmed by the ophthalmologist's testing. They contend that none of the PTSD cases are over $100,000 and that case (Weaver) involves other injuries. They argue that the most the plaintiff is entitled to is $35,000 for his general damages.
Plaintiff asserts that defendant ignores the increased risks and fears of developing other conditions from the exposure. Plaintiff contends that the court must first decide whether the trial court abused its great discretion before it modifies the jury award. In this respect, he points out that only when the abuse is found, may the court resort to a review of other cases, as each case must be decided on its own particular facts.
In Coco v. Winston, 341 So.2d 332, 335 (La.1977), the La. Supreme court stated:
Further we believe that, heretofore, courts of appeal have placed too much emphasis on their review of other reported decisions. Certainly no two cases are ever fully alike. And whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Of course, another factor bearing on this matter is that significant change has been, and is taking place in our society not the least of which are changes in economic conditions (particularly rampant inflation), fluctuating job categories, employment opportunities, and even lifestyles. Furthermore, it is impossible for an appellate court to judge what evidence in a particular case was given special weight by the finder of fact.
In this case, the evidence shows that plaintiff is a 25 year old who has suffered a myriad of physical effects from the dry eye syndrome, including grittiness, irritation, blurriness, eye pain and watery discharge, difficulty reading for the long periods required for a college student and difficulty in reading numbers in his part-time work at the grocery. The damage is permanent and so *1027 are the effects. He has incurred a high risk of developing sensitivity to petrochemicals common to the normal environment, which will limit his decisions as to where he can live and work because any future chemical exposure will result in an acute response by the immune system. He will develop some type of organic disease or disorder from the exposure, including potential liver and spleen problems. He has suffered PTSD, compounded by his worry and uncertainty about the future physical effects the exposure will have on him. The PTSD has not abated after more than one year of psychiatric treatment, making his prognosis poor, particularly since the medical condition (dry eye syndrome) will not be cured and will constantly trigger focus on the incident. After reviewing this evidence, we note that the general damage award is high but we cannot say that the jury abused its discretion in awarding plaintiff $330,700 for past and future physical pain and suffering and emotional and psychological damage. Thus, we affirm the verdict.[4]
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of appeal are to be paid by appellant.
AFFIRMED.
NOTES
[1] The judgment was amended pursuant to a motion to clarify the award of costs in the first judgment.
[2] Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993) [$35,000]; Buquoi v. Allstate Ins. Co., 556 So.2d 163 (La.App. 5th Cir.1990) [$45,000]; Gust v. Brint, 577 So.2d 1012 (La.App. 4th Cir.1991) [$95,000]; Daigle v. Melancon, 558 So.2d 267 (La.App. 3rd Cir.1990) [$250,000]; Broussard v. Peltier, 479 So.2d 679 (La.App. 3rd Cir.1985) [$30,000]; Hood v. State, DOTD, 587 So.2d 755 (La.App. 2nd Cir.1991) [$100,000]; Foster v. Lafayette Ins. Co., 504 So.2d 82 (La.App. 2nd Cir.1987) [$75,000]; Hurst v. Eaton, 588 So.2d 1130 (La.App. 1st Cir.1991) [$45,000].
[3] Swan v. Vernon Milling Co., 517 So.2d 1161 (La.App. 3rd Cir.1987 [aggravation of pre-existing PTSD and depression$45,000]; Smith v. La. Farm Bureau Casualty Ins., 603 So.2d 199 (La.App. 3rd Cir.1992) [raccoon bites on thigh, ankle and arm, resulting in an ulcer and PTSD $35,000]; Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2nd Cir.1993) [injuries from a beating and PTDS for six years$30,000 for general damages]; Thomas v. City of St. Martinville, 611 So.2d 678 (La.App. 3rd Cir.1992) [headaches, nausea, impaired vision, fatigue, tingling in hands and PTSD for two years$20,000]; Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2nd Cir.1988) [aggravation of TMJ and PTSD$20,000]; Leckelt v. Eunice Superette, Inc., 555 So.2d 11 (La.App. 3rd Cir.1989) [scalp laceration, dizziness, depression and PTSD $15,000]; Giamanco v. EPE, Inc., 619 So.2d 842 (La.App. 1st Cir.1993) [$10,000 for mental anguish for damage to hair at beauty salon]; Gagnard v. Baldridge, 612 So.2d 732 (La.1993) [accidentone year of PTSD$7,177].
[4] Because of our findings, we need not address defendant's final argument that the trial judgeerred in failing to grant the Motion for New Trial or Judgment Notwithstanding the Verdict.