JAMES L. CANNELLA, Judge.
| ¡¿The Plaintiff, Ranger Insurance Company (Ranger), appeals from the trial court judgment rendered in favor of the Defendant, Shop Rite, Inc. (Shop Rite), finding that Shop Rite did not owe indemnity to Ranger for a tort judgment which Ranger paid on behalf of its insured, Thibaut Oil Company (Thibaut). For the reasons which follow, we affirm.
On December 23, 1992, Dwayne Jeffery (Jeffery) was attempting to pump gasoline into his automobile at Shop Rite’s convenience store when the gasoline dispensing hose broke and gasoline sprayed onto Jeffery and into his eyes. The gasoline hose and pumps at issue were owned by Thi-baut. Thibaut was insured by Ranger. Thibaut leased the gasoline dispensers to Shop Rite through a lease agreement dated June 9, 1989. As a result of his injuries, Jeffery filed suit against Thibaut and Ranger, alleging both negligence and strict liability. Following a jury trial, Thibaut was found liable to Jeffery in the amount of $695,675. The judgment | awas affirmed on appeal. Jeffery v. Thibaut Oil Company, 94-851 (La.App. 5th Cir.3/1/95), 652 So.2d 1021, writ denied, 95-816 (La.5/5/95), 654 So.2d 330. Ranger satisfied the judgment then filed suit against Shop Rite, seeking contractual indemnity for the *1042 judgment as well as $40,951 for its cost of defense.
In support of its position, Ranger relies on language in the lease agreement between Thibaut and Shop Rite that provided:
... Lessee [Shop Rite] shall indemnify and hold harmless Lessor [Thibaut] against all claims, suits, losses, costs and liabilities on account of any injuries or damages to any persons or property caused by or happening in connection with the premises and/or use of equipment in the operation of the premises or the condition, maintenance or use thereof or operations thereof.
Shop Rite denied the claim, arguing that, because the indemnity language in the lease agreement was in the same paragraph which described the parties’ relationship, the indemnification due was limited by the terms of that relationship. The beginning of the paragraph containing the indemnity provision states:
RELATIONSHIP OF THE PARTIES
Lessee [Shop Rite] is and will continue to be an independent merchant not to be considered in any way subject to the control of the Lessor [Thibaut]. Lessee’s [Shop Rite’s] status with Lessor [Thibaut] shall be solely as a tenant in possession in this connection, Lessor [Thibaut] shall not be responsible for any act or omission on the part of any agents or employees or officers of Lessee [Shop Rite] which may or does cause or do damage to persons or property lawfully on the premises and who may operate to perform any duties or functions in connection with Lessee’s [Shop Rite’s] obligations under this lease. In this connection, .... (indemnity provision quoted above).
The trial court first considered the indemnity issues in motions for summary judgment, wherein it partially granted Shop Rite’s motion, finding that it did not have to indemnify Thibaut for Thibaut’s own negligence, but only for its (Shop 1¿Rite’s) own negligence insofar as it contributed to Jeffery’s injuries. Since the negligence of Shop Rite was a factual matter, the trial court denied Ranger’s motion for summary judgment and set the matter for trial.
Following trial, the trial court rendered judgment in favor of Shop Rite and dismissing Ranger’s claim for contractual indemnity. In its oral reasons for judgment, the trial court reasoned that since the indemnity provision was in the same paragraph with a description of the parties’ relationship and was introduced with the phrase “[i]n this connection,” the indemnity obligations were limited to the contractual obligations assumed under the lease agreement. The trial court further found that Shop Rite did not have a duty to inspect the hose, especially at the level involved here, six to eight feet above the ground, and, therefore, Shop Rite was not negligent. It is from this judgment that Ranger appeals.
On appeal, Ranger assigns three errors and contends that this Court should review the case de novo.
It is well settled that questions of law are not reviewed on appeal under the manifest error/clearly wrong standard of review. Contractual interpretation is a question of law. Paddison Builders, Inc. v. Newpark Square One Condominiums, 03-144 (La.App. 5th Cir.6/3/03), 848 So.2d 750. When addressing questions of law, a reviewing court conducts a de novo review. Campbell v. Markel American Insurance Company, 00-1448 (La.App. 1st Cir.9/21/01), 822 So.2d 617. On the other hand, some cases present both questions of law and fact, the latter of which are reviewed under the manifest error standard.
*1043 In Ranger’s first two assigned errors, it argues that the trial court erred in concluding that the scope of Shop Rite’s , contractual indemnity obligations should be limited by the delineated contractual duties that Shop Rite assumed under the | Klease agreement and by not finding that Shop Rite .was obligated to indemnify Ranger for strict liability claims.
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Soverign Ins., Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986); T.L. James & Co., Inc. v. Sam’s Truck Service, Inc., 03-1470 (La.App. 5th Cir.5/26/04), 875 So.2d 977.
As noted by the Louisiana Supreme Court in Campbell v. Melton, 01-2578 (La.5/14/02), 817 So.2d 69:
In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent’ of the parties with courts giving the contractual words their generally prevailing meaning unless the words .have acquired a technical meaning. La. Civ. Code arts.2045, 2047; See e.g., Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co., 93-0911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ. Code art.2046.
Further, each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. La. C.C. art.2050. Alco Collections, Inc. v. Poirier, 952582 (La.App. 1st Cir.9/27/96), 680 So.2d 735, writ denied, 96-2628 (La.12/13/96), 692 So.2d 1067; Security Center Protection Services, Inc. v. Lafayette Sec. & Electronic Systems, Inc., 95-693 (La.App. 5th Cir.1/17/96), 668 So.2d 1156, writ denied, 96-0428 (La.3/29/96), 670 So.2d 1217. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art.2051.
Applying these legal principles to the case before us, we agree with the trial court’s interpretation of the contract. As noted above, the indemnity provision | (¡does not stand alone in the agreement. Rather it is in a paragraph entitled “Relationship of the" Parties” and follows, in the same paragraph, the condition that Thibaut will not be responsible for acts, or omissions by Shop Rite’s employees which cause damage to persons or property lawfully on the premises. The indemnity provision then begins with the introduction “[i]n this connection .... ” which we find clearly references the preceding sentences. Thus, as determined by the trial judge and provided by the clear terms of the agreement, the contractual indemnity obligation is limited to indemnifying Thibaut for damages resulting from the acts and omissions of Shop Rite’s employees.
Ranger relies on several cases in support of' its position. Of particular interest is Harris v. Agrico Chemical Company, 570 So.2d 474 (La.App. 5th Cir.1990) because it comes from this circuit. In Harris, an industrial contractor, Manufacturer’s Enterprises, Inc. (MEI), had contracted with Agrico Chemical Company (Agrico), for MEL to supply personnel for maintenance work and machinery. The plaintiff in the case, Harris, was on Agri-co’s property to pick up a piece of heavy equipment. He was injured when the loading machine owned by Agrico and operated by an MEI employee malfunctioned because its internal gears broke. The question considered in the case was whether the indemnity, agreement be *1044 tween MEI and Agrico included indemnity for Agrico’s negligence as well as Agrico’s strict liability.
The pertinent contract language stated that MEI agreed: to protect, indemnify and save Agrico harmless from and against all claims, demands, and causes of action, suits or other litigation ... of every kind and character, on account of personal injuries or death or damage to property, whether arising out of negligence on the part of Agrico or otherwise, in any way occurring, incident to, or arising out of the work performed by Contractor hereunder, and particularly, but not by way of limitation, against any loss or damage whatsoever caused by fire, explosions, or accidents of any kind during the performance of and until |7the completion of said work and the acceptance thereof by Agrico.... (Emphasis added.)
In concluding that this indemnity provision covered both Agrico’s negligence as well as its strict liability, the Court looked to the language of the agreement and considered it in light of the legal principle that “in making a determination as to whether indemnity covers strict liability the courts should review the contract as a whole, as well as the general provisions for indemnity, to determine the parties’ intent.” The Court found that the express language of the provision included indemnity for the indemnitee’s, Agrico’s, negligence as well as for its strict liability.
In considering Hams, we do not find that it supports Ranger’s position in this case. Under the legal principles pronounced in Harris, we must determine the extent of the indemnity coverage by reviewing the contract as a whole to determine the intent of the parties. In doing so, we find that the indemnity provision in this case, contrary to that in Harris, evidences no far reaching indemnification intent. Specifically, it does not expressly include an intent to cover the indemnitee, Thibaut, for its own negligence nor for claims of “every kind and character.” Moreover, in reviewing the contract as a whole, we find that the beginning of the indemnity provision, which provides “[i]n this connection,” expressly indicates the contrary intent between the parties limiting the indemnity coverage by tying it to the acts and omissions of Shop Rite’s employees. Unlike the Harris court, we find no intent expressed in this agreement for Shop Rite to indemnify Thibaut for its strict liability or liability from its own negligence.
Accordingly, we must turn to a review of the lower court finding that the damages sustained by Jeffery were a result of Thibaut’s negligence or its strict liability and not the negligence of Shop Rite. In Ranger’s final assignment of |serror, it is argued that the trial court erred in finding that Shop Rite’s negligence did not contribute to the accident. Ranger takes issue with the trial court’s finding that Shop Rite did not have an obligation to inspect the portion of the gasoline hose where the split occurred. Ranger argues that the trial court erred in limiting the scope of Shop Rite’s duties to those expressly identified in the lease.
Shop Rite disagrees, noting that the contractual obligations of the parties were clearly set out in the lease agreement wherein it provided that it was Thibaut’s duty to maintain and repair any equipment and, therefore, it was also its duty to inspect the equipment. Shop Rite’s duties were expressly limited to operating the station, transmitting fees and receipts, notifying Thibaut of any equipment malfunction and keeping the area clean. Thus, Shop Rite argues that any negligence or liability for the accident rests with Thibaut and, thereby, Ranger.
*1045 The lease agreement had a specific section delineating the Lessee’s obligations. In addition to the financial obligations of operating the premises, reporting the sales, forwarding the receipts and remitting proceeds, the lease also provided:
(e) Lessee shall notify Lessor or one of Lessor’s agents or employees at its Donaldsonville office immediately should any of Lessor’s equipment at said self-service station malfunction or become inoperable.
(f) Lessee shall keep the area of self-service station premises in a neat, clean and orderly fashion.
(g) Lessee shall display in a proper commercial fashion the trade name of itself or its successor.
The lease agreement also specified the Lessor’s obligations, which, in addition to supplying the required gasoline, provided in pertinent part:
(a) Lessor agrees to maintain, or cause to be maintained, in good working order, the self-service station equipment and will render efficient service to Lessee in case of breakdowns within reasonable time after being notified by lessee of such breakdowns.
1 ^Considering these contractual provisions, as well as others, the trial court noted that the equipment was owned by the lessor and described in the lease as including the islands, pumps, and related equipment. The lease specified that the equipment remained the property of the lessor. The contract provided that the lessor shall install the equipment and maintain it in good working order. The trial court further found as a factual matter that the breaking or bursting of the gasoline hose that caused the customer’s injuries was six to eight feet from the ground. After the accident it appeared as a small crack in the hose of approximately one inch in length. Shop Rite had no notice of any leaking or defect in the hose until the moment of the accident. The trial court also found that normal cleaning of the equipment, which was all Shop Rite was obligated to do, would not have revealed the crack in the hose, even if it were there before the accident. Moreover, even if a crack in the outer hose would have been noticed, it would not have meant that the inner core of the hose was broken or would leak. Based on these findings, the trial court ruled that Shop Rite was not negligent and that liability for the accident with resulting injuries to Jeffery rested solely with Thibaut, and therefore Ranger.
Following our review of the record and the law, we find no error in the trial court ruling. The lease agreement was the contract regulating the rights and obligations of the parties. The lease did not impose on Shop Rite a duty to inspect or maintain the equipment that belonged to Thibaut. To the contrary, it was specifically provided that Thibaut would maintain the equipment in good working order. Shop Rite’s duty was limited to keeping the equipment and area clean and to report any known defects or problems with the equipment. The facts, as found by the trial court and not shown to be clearly wrong, are that Shop Rite had no knowledge of any problem with the hose prior to the accident, which caused Jeffrey’s injuries. Thus, we find, as did the trial court, that Shop Rite did not |inbreach any duty that it owed under the lease agreement. Absent a finding of negligence by Shop Rite, under the terms of the contract, we find that Shop Rite did not owe indemnity to Thibaut, and its insurer, Ranger, for Thibaut’s negligence, or strict liability for the sums paid to Jeffery for his injuries and to defend the case.
Accordingly, for the reasons stated above, the judgment of the trial court in favor of Shop Rite and against Ranger is *1046 affirmed. Costs of appeal are to be paid by Ranger.

AFFIRMED.