J^DUFRESNE, Chief Judge.
This is an appeal by Physician Network Corporation of Louisiana and Tenet HealthSystem Hospitals, Inc. (collectively PNC), defendants-appellants, from a judgment ordering payment for unused vacation days, as well as attorney fees pursuant to La. R.S. 23:631 et seq., to Drs. Juan and Eugenio Labadie, two former contract employees of PNC. The Labadies have answered the appeal seeking penalties against defendants under the same statutes. For the following reasons we affirm the judgment as to the award for payment for unused vacation days. However, we vacate the award of attorney fees and remand that portion of the case to the district court for further proceedings in accordance with this opinion.
The underlying facts are not disputed. In 1995 the Labadies and their partner, Dr. Fernando Astilla, were engaged in a private obstetrics and gynecological medical practice. In January of that year they were approached by PNC in regard to *1280 employment by that corporation in a similar practice. A contract was eventually signed by the parties and the | ^doctors began their employment on July 1, 1995. After about five years the parties decided to terminate their relationship. All issues between them were concluded, except for the matter of payment for accrued days off. Both doctors filed separate suits seeking payment for these days, and the cases were consolidated for a bench trial. Dr. Astilla had ceased his association with PNC in 1996 and was not a party to the present action.
The dispute arises from two clauses in the employment contracts, which are as follows:
5. EMPLOYEE’S OBLIGATIONS
5.2 Medical Practice. Doctor shall engage in the practice of medicine and the care and treatment of patients as an employee of Corporation for a minimum of thirty-six (36) hours per week, subject to vacations, continuing medical education, conferences, and holidays discussed below (“Doctor’s Medical Practice”). Doctor shall schedule office hours, Monday and Thursday from 2:80 p.m. to 5 p.m.; Tuesday and Wednesday from 9:30 a.m. to 12 p.m. and 1:30 p.m. to 5 p.m.; and Friday 9:30 a.m. to 4 p.m., if on weekend call. Doctor shall schedule surgeries on Monday and Thursday morning. In addition to Doctor’s scheduled office and hospital hours, Doctor shall also be available to provide on-call coverage as requested from time to time by the Corporation. As used herein, the term “on-call coverage” shall mean Doctor’s availability on the premises or by telephone at the assigned designated hospitals within thirty (30) minutes of call. Doctor shall only be responsible for call coverage for physicians practicing at the same locations as Doctor. Doctor shall accrue one day off after each call period. During the term of this Agreement and any extensions thereof unless sooner terminated as provided for herein, Doctor shall not enter into any other physician employment contract similar to this Agreement, or otherwise engage in the practice of medicine, directly or indirectly, except as Corporation’s employees as provided by this Agreement.
8. EMPLOYEE’S BENEFITS
8.2.2 Doctor shall accrue thirty-one (31) paid days for vacation, holiday and sick leave per year. Vacation, holiday and sick leave benefits begin to accrue on the first day of employment.
During the course of the contract the doctors were each on call about 90 times per year and it is not disputed that under Section 5.2 of the Lcontract they were entitled to the same number of days off. The parties also agreed that the doctors did not take most of these days off. It was further stipulated that if these days were found to be accrued vacation time for which payment was due, then the amounts to which the doctors were respectively entitled were $386,351.20 for Juan, and $374,101.04 for Eugenio.
At trial both parties presented evidence bearing on how the two above clauses in the contract came into being, and what their respective understandings were in agreeing to those terms. Based on the wording of the contract as well as on this extrinsic evidence, the trial judge determined that the days off were in fact paid days that accumulated if not used. He therefore awarded the plaintiff doctors the above sums, with interest from date of demand. He also awarded attorney fees of 25% of the base amounts pursuant to La. R.S. 23:632, which provides for such fees. He denied, however, plaintiffs’ demand for penalties on grounds that there was a legitimate dispute as to whether the *1281 days off had accumulated. PNC now appeals the awards for payment for the days off and attorney fees. The doctors have answered the appeal asserting that penalties should have been assessed.
The pertinent statutes here are La. R.S. 23:631 et seq. regarding payment of wages at the termination of employment. In interpreting these statutes this court has repeatedly held that unused vacation pay is considered wages for purposes of the statutes unless the employer’s established policies preclude such payments, Huddleston v. Dillard Department Stores, Inc., 94-53 (La.App. 5th Cir.5/31/94), 638 So.2d 383. Here, there is no serious argument that PNC has a policy against paying | ¿for unused vacation time at the end of employment contracts. Therefore, if the days off provided in Sec. 5.2 are considered as paid vacation days which accumulated then they are also wages which must be timely paid pursuant to the statutes.
In his reasons for judgment the trial judge summarized PNC’s position as being that “the day off following a call period was to be used immediately or else forfeited.” He rejected this proposition because in his judgment extrinsic evidence concerning the negotiations leading up to inclusion of the “day off’ clause led to the opposite conclusion. That evidence was as follows.
It was agreed that the “day off’ clause did not appear in the contract originally proposed by PNC and that the only provision for vacation time in that document was the 31 day period of Sec. 8.2.2. Dr. Juan Labadie testified that he was interested in more days off and brought that to the attention of Mr. Richard Rauh, the contract representative of PNC. Rauh informed him that PNC’s standard contract only provided for 31 days of vacation and that that clause could not be altered. Instead, the parties agreed to provide for more time off by inserting the “days off’ clause in Sec. 5.2.
In construing Sec. 5.2, the trial judge stated:
The gist of defendants’ position is that the day off following a call period was to be used immediately or else forfeited. It could not be carried over, used on a subsequent day other than immediately following the call period, saved, or otherwise accumulated.
The Court finds it rather difficult to believe that this was in fact the intent which the defendants had in mind at the time the contract was entered into. The specific language included, and reviewed by the defendants’ lawyer, was that “the doctor shall accrue [emphasis added] one day off after each call period,” The language in this provision in no way suggests or otherwise implies that the off day IfiWas, or had, to be used immediately following the call period or otherwise forfeited. To the contrary, the use of the term accrue implies that these days could be carried over, accumulated, and used at times other than the day which immediately followed the call period.
Based on this analysis of the evidence, he concluded that the “days off’ were paid days that accumulated, and he ordered payment for them. We find no error in this conclusion, and therefore affirm it.
PNC urges here that it was legal error to interpret the contract as providing the doctors with 120 days of paid vacation time per year. Alternatively, it argues that such a result is absurd. While we admit that this arrangement is at first glance unusual, the contract nonetheless so provides. Section 5.2 states unambiguously that the doctors are to “accrue” one day off for each on call period. It was stipulated that there were some 90 call periods *1282 in a year thus providing 90 days off. Richard Rauh, testifying on behalf of PNC, said that so long as the 36 hours per week requirement was met the days off would be paid days.
The only other issue to be resolved was whether the days off accumulated if not used. The trial judge relied on the word accrue, as meaning that the days would accumulate. Although not noted by the trial judge, accrue is used twice in the relatively short Sec. 8.2.2 in reference to accumulating vacation time. Considering all of these circumstances, we can only conclude that PNC negotiated a contract which by its specific terms provided that the doctors would accumulate some 120 days of paid vacation per year. While those terms may have been unfavorable for PNC, we do not consider them to be absurd.
PNC next asserts that the trial judge erred in excluding testimony by Robert Katz, offered by it as an expert in “physician practice management [ Band physician employment contracts.” It proffered his testimony, which it represents as directed to customary contractual terms in the physician employment field. Mr. Katz stated on preliminary examination that there were no fields of expertise known to him as “physician practice management” or “physician employment contracts.” He also said that there were no professional schools or courses in such areas, and that he had no degrees as such. He also stated that he was a CPA who advised doctors about employment contracts, and specifically fringe benefits.
The trial judge noted that Mr. Katz’s explanation of what he does in the field was directed to numerical analyses of contracts, which are then turned over to attorneys for final review. He concluded that Mr. Katz was not an expert in the interpretation of such contracts and so refused to admit him as an expert in the case. Trial judges are given discretion in the admission or exclusion of experts, and their rulings will not be disturbed absent an abuse of that discretion, Merlin v. Fuselier Construction, Inc., 00-1862 (La. App. 5th Cir.5/30/1), 789 So.2d 710. In the circumstances of the present case we find no abuse of the trial court’s discretion in refusing to admit Mr. Katz as an expert in the areas in which he was offered.
PNC next argues that were the off days found to be compensable, the three year prescriptive period for unpaid wages of La. Civ.Code, Art. 3494 would preclude payment for the first two years of vacation time of the five year contract. Article 3495 provides that the prescriptive period of Art. 3494 commences to run from the day payment is exigible and accrues as to past due wages even if the labor continues.
Thus, the question here, which to our knowledge is res nova, is when does payment for unused vacation time becomes exigible. The doctors Largue that because accumulated vacation time may be taken while the wage earner is still employed, any demand for payment for that time prior to termination of employment would be premature. It is only when the wage-earner leaves the job that he is entitled to payment for unused vacation, and that is when prescription commences as to that obligation. We hold that this is the proper interpretation of Art. 3495. To rule otherwise would be, in effect, to preclude the accumulation of vacation time beyond three years, and this we decline to do.
The last issue raised by PNC concerns the award of attorney fees. Under La. R.S. 23:632, when a wage-earner prevails in a suit for unpaid wages, “reasonable attorney fees shall be allowed.” PNC’s basic contention is that the trial judge erred in not compelling the doctors’ *1283 attorneys to produce time sheets, or at least some evidence as to the amount of time spent on the case.
In Rivet v. State, Dept. of Trans, and Dev., 96-0145 (La.9/5/96), 680 So.2d 1154, the court set forth a number of factors to be considered in determining whether a fee is reasonable or not. In that case the trial judge had awarded a percentage fee, apparently based on his consideration of the record and his knowledge of the case. In setting aside this award and remanding for further proceedings, the court stated that there was no evidence of record to substantiate the amount of time actually expended by the attorney in the case. While Rivet involved an interpretation of the clause “reasonable attorney fees actually incurred” as used in La. R.S. 13:5111(A) relating to appropriation suits, the court also noted that the time and labor involved is a major consideration in assessing the reasonableness of fees in any case.
| sWhile such an inquiry might be less important where the issue is the fee to be paid under a contingency fee contract with a party’s own attorney, where as here the fee is to be paid by the opposing party such an inquiry should be undertaken. We therefore set aside the attorney fee awards in this case and remand the matter to the district court to receive evidence showing the amount of time and labor required of plaintiffs’ counsel in the case, and then to fix a fee based upon that factor as well as the other factors enumerated in Rivet.
The final matter here is the doctors’ answer to the appeal in which they seek imposition of penalties pursuant to La. R.S. 23:632. It is a well established rule that penalty wages will not be assessed against an employer unless its actions are arbitrary and unreasonable; where there is a bona fide dispute the courts will not impose such penalties, See Boudreaux v. Hydraulic Rebuilders, 98-126 (La.App. 5th Cir.5/27/98), 713 So.2d 1148. Here, the trial judge found that there was a bona fide dispute and we agree with that determination. We therefore affirm the denial of the doctors’ claim for penalties.
For the foregoing reasons the judgment of the trial court is hereby affirmed as to the award for payment for days off. The award of attorney fees is set aside and the case is remanded to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

DALEY, J., dissents with reasons.