875 So.2d 977 (2004)
T.L. JAMES & COMPANY, INC. and Highlands Insurance Company
v.
SAM'S TRUCK SERVICE, INC.
No. 03-CA-1470.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
Charles M. Lanier, Jr., New Orleans, LA, for Plaintiff/Appellant.
Steven K. Faulkner, Harahan, LA, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Appellants, T.L. James & Company, Inc., and Highlands Insurance Company, appeal a judgment which dismissed their claims against plaintiff, Sam's Truck Service, Inc., with prejudice. For the foregoing reasons, the judgment of the trial court is hereby reversed.

FACTS AND PROCEDURAL HISTORY
Appellant, T.L. James & Company, Inc. ("T.L. James"), was hired to help facilitate work on the St. Charles hurricane levee, owned by the U.S. Army Corps of Engineers, New Orleans District. On July 25, *978 1994, T.L. James signed a Subcontract Agreement with Sam's Truck Service, Inc. ("Sam's"), to assist them with a portion of the hurricane levee project. Thereafter, Sam's further orally agreed to subcontract a portion of its work for T.L. James to yet another entity, Arabi Brothers Trucking, Inc. ("Arabi").
On September 7, 1994, an employee of Arabi Brothers was involved in a collision at the levee job site with a vehicle owned by Miller Excavating Services, Inc. ("Miller."), who, incidentally, had also entered into a subcontract with T.L. James for work on the hurricane levee project. An employee of Miller, Viola Charles, was injured as a result of the accident, and filed suit against T.L. James to recover benefits under the Louisiana Worker's Compensation Act, alleging that she was T.L. James statutory employee.[1] Sam's refused T.L. James' request for defense and indemnity made on April 18, 1996.
T.L. James' worker's compensation insurer, Highlands Insurance Company ("Highlands"), ultimately paid Charles $18,000 in worker's compensation benefits. In the process of defending Charles' claim for benefits, Highlands incurred $17,356.91 in attorney's fees, and $1,953.07 in costs. T.L. James and Highlands then intervened in Charles' tort suit against Arabi to recover their compensation lien and to resolve the issue of workers compensation benefits. When Charles' tort suit was settled, T.L. James received all but $5,000 of the worker's compensation benefits that it had paid to Charles.
In the present suit, T.L. James and Highlands filed suit in the 24th Judicial District Court for the Parish of Jefferson to recover the $5,000 in worker's compensation benefits, which it claims is owed by Sam's pursuant to their indemnification agreement, as well as $19,309.98 in attorney's fees and court costs.
After a trial on April 26, 2002, which was submitted without witnesses and on a stipulation of facts between the parties, the court dismissed T.L. James' case against Sam's with prejudice.
It is from this judgment that T.L. James and Highlands timely filed the present appeal.

LAW AND ANALYSIS
On appeal, T.L. James and Highlands raise two assignments of error: 1) The trial judge committed legal error in applying equitable principles in lieu of established law of contractual interpretation, and; 2) The trial judge committed legal error in failing to give application to the provisions of the Subcontract Agreement requiring Sam's Truck Service, Inc., to indemnify T.L. James & Company and Highlands for attorney's fees it incurred as well as for benefits it paid to Viola Charles.
In this case, the trial court gave the following reasoning in determining that Sam's did not owe a duty to indemnify T.L. James:
THE COURT:
Sam's had [sic] indemnity agreement with T.L. James and Highland Insurance Company. Highland does, in the Court's opinion, step into the shoes of T.L. James ...
I think by operation of law and conventional obligations, Highlands steps into the role of T.L. James.
Sam's had an indemnity agreement basically to hold harmless T.L. James *979 for anythingany suits that they got because of their work or whatever.
The Court is of the opinion that Sam's has met its obligation under that indemnity agreement by settling the tort lawsuit.
The Court is of the opinion that the remaining damages or expenses that have been paid by Highlands in attorney's fees and settlement in the workmen's comp case are not what was intended with the indemnity agreement with Sam's; that no way could T.L. James and Sam's have contracted for an indemnity agreement for another company's status.
... the Court just does not feel that the indemnity agreement included a[sic] worker's comp.
The trial Court later explained:
THE COURT:
But the bottom line is that, even under contract, I think that Sam's contracted with T.L. James to indemnify it for whatever damages they caused and by the settlement of the tort suit, they met their obligation. And that's the bottom line as to the way that I see the contract also.
As this Court noted in Rossi v. Bailey,[2]
When appellate review is not premised on any factual findings made by the trial court but is based upon an independent review and examination of the contract on its face, the manifest error rule is inapplicable. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect.
Further, the general rules which govern the interpretation of other contracts apply in construing a contract of indemnity.[3]
As noted by the Louisiana Supreme Court in Campbell v. Melton:[4]
In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. Civ. Code arts.2045, 2047; see e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ.Code art.2046.
Sam's argues, however, that this Court should first consider a finding of fact made by the trial court, wherein the court stated:
THE COURT:
Regardless of the [sic] whose fault it is, we all agree that if Miller had workers comp or if the agent hadn't stolen the money, that we wouldn't be here and that Sam would be offthe hook.
Sam's further argues, "It is absolutely of no moment that Charles' injury happened to be caused by a vehicular accident with one of Sam's subcontractors. This claim would be the same if Viola Charles' vehicle had been struck by another Miller vehicle, *980 or for that matter, if she had simply fallen while stepping out of her truck."
A court of appeal may not set aside the findings of the trial court unless they are clearly wrong or manifestly erroneous.[5] Under this standard, the issue is whether the trier of facts conclusion was reasonable, not whether it was right or wrong.[6]
In regard to appellants' first assignment, that the trial court erred in apparently applying equitable principles in lieu of established law of contractual interpretation, we first note our opinion in the case of Labadie v. Physician Network Corp. of Louisiana, Inc.,[7] wherein we stated:
Contractual ambiguities must be construed in light of equity, usage, and the parties' conduct. Louisiana Civil Code articles 2053 and 2054 provide:
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Accordingly, we have recognized that under circumstances where provisions of a contract do not specifically enumerate an outcome of obligations between the parties, equity may be used as a factor by the court to resolve disputes. As stated above, however, the use of equity in determining contractual obligations is contingent upon whether portions of the contract at issue are ambiguous.
The applicable provisions of the contract between Sam's and T.L. James provide, in relevant part:
3.1 [Sam's] shall not assign all or any part of this Subcontract, including the proceeds, or sublet all or any part of the Subcontract Work provided for hereunder without the prior written consent of [T.L. James], but in any event, and without regard to whether such consent is given or not, [Sam's] agrees to indemnify and save [T.L. James] harmless. No assignment or subletting, with or without consent, shall relieve [Sam's] from any obligation herein assumed ... [Emphasis provided]
7.1 [Sam's] shall defend, indemnify, and hold harmless [T.L. James] ... against any loss, damages, claim, suit, liability, judgment and expenses (including but not limited to attorney fees and other costs of litigation), ... arising out of injury ... arising from or in connection with performance or non performance of the work under this Subcontract by [Sam's], its agents or subcontractors, even though caused by the joint negligence ... or fault of the party indemnified herein ..., at its expense, shall defend any such claim or suit against an indemnified party and shall pay any resulting settlement or judgment ... [T.L. James] shall have the right, but not the duty, to participate in the defense of any such claim or suit with attorneys of its own selection which *981 it shall pay as incurred which fees shall, however, be subject to reimbursement by [Sam's] as set forth above, but shall not relieve [Sam's] of any obligations hereunder. [Emphasis added].
11. ATTORNEY'S FEES. [Sam's] shall be responsible and liable for all costs, disbursements, and expenses, including attorney's fees, incurred by [T.L. James] ... as a result of [T.L. James] having to defend or take part in any action or proceeding which directly or indirectly relates to acts or omissions of [Sam's] or its subcontractors or suppliers.
After a de novo review of the contract between the parties, we find no ambiguity that would warrant further interpretation of the parties' intent beyond the four corners of the contract. The contract between T.L. James and Sam's clearly provides that Sam's would indemnify T.L. James against any damages or attorney's fees arising out of work performed by Sam's or any of Sam's subcontractors. Arabi Brothers was a subcontractor of Sam's at the time of the accident on September 7, 1994. Therefore, under the clear and explicit terms of the contract, there seems to be little question that Sam's owes a duty of indemnification to T.L. James for attorneys fees and damage awards that it paid as a result of defending the worker's compensation claim that arose from an injury caused by Arabi Brothers.
We further disagree with the trial court's notion that the clear intention of the parties in the contract is invalid, simply because of a happenstance that the injured party worked for another T.L. James contractor, and we deem this finding of fact to be manifestly erroneous.
Accordingly, for the foregoing reasons, the judgment dismissing the claims of T.L. James and Highlands is reversed. We further award to Appellants $5,000, representing the amount of worker's compensation benefits that it had paid to Viola Charles, as well as $17,356.91 in attorney's fees, and $1,953.07 in costs that appellants paid in defending those actions. Appellee is further ordered to bear all costs of this appeal.
REVERSED.
NOTES
[1] Miller reportedly did not have insurance as the result of fraudulent dealings by its insurance agent.
[2] 99-1164 (La.App. 5 Cir. 4/25/00), 759 So.2d 282; writ denied, XXXX-XXXX (La.9/29/00), 770 So.2d 353
[3] Soverign Ins., Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986).
[4] 2001-2578 (La.5/14/02), 817 So.2d 69.
[5] Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); LaSalle v. Benson Car Co., Inc., 00-1459 (La.App. 5 Cir. 1/30/01), 783 So.2d 404, 408.
[6] Stobart v. State, DOTD, 92-1328 (La.4/12/93), 617 So.2d 880, 882.
[7] 01-1180 (La.App. 5 Cir. 1/29/02), 805 So.2d 1278.