893 So.2d 1030 (2005)
Harry LEE, Sheriff for the Parish of Jefferson
v.
The FIRST NATIONAL BANK OF COMMERCE.
No. 04-CA-659.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 2005.
Rehearing Denied March 10, 2005.
*1031 Kenneth C. Fonte, Edmund W. Golden, Joseph J. Lepow, Golden & Fonte, Metairie, Louisiana, for Plaintiff/Appellee.
John W. Hite, III, Maria N. Rabieh, Lisa V. Macaluso, Ira J. Middleberg, Alan D. Weinberger, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, and CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, Bank One, Louisiana (Bank One), as successor to The First National Bank of Commerce (FNBC)[1], appeals from the trial court judgment in this breach of contract case rendered in favor of the Plaintiff, Harry Lee, Sheriff for the Parish of Jefferson, (Sheriff Lee). For the reasons which follow, we affirm.
In June of 1988, Sheriff Lee issued an "Invitation to Bid" for a fiscal agent after being told by the legislative auditor that such an agent was necessary to be in compliance with the law. As a result of the bidding process, Bank One became the fiscal agent for Sheriff Lee in November, 1988. For the first four months the accounts were set up and business was conducted between the parties without the benefit of a written contract. The Fiscal Agency Contract was reduced to writing and executed by the parties on March 17, 1989, although the effective date of the contract was retroactive to November 1, 1988. It was to be effective until November 1, 1990. At the end of the term of the written contract, the agreement was continued on a month to month basis by agreement of the parties until about June of 1997 when terminated by Sheriff Lee. After the term of the contract ended, Sheriff Lee indicated to a representative of the bank that a "discrepancy" was found in the bank statements.
*1032 This matter involves a dispute between the parties over the interpretation of a paragraph in their contract. Paragraph VI of the contract, giving rise to the controversy herein, provides:
The bank agrees to pay interest on all demand deposits at a rate based on the average 91 day treasury bill discount rate plus 25 basis points, adjusted monthly. (Emphasis provided.)
Bank One, throughout the contract period, did not pay interest on a portion of Sheriff Lee's deposits designated as "reserves" or "uncollected funds." Sheriff Lee's position is that, according to the contract between the parties, said deposits are included in the category of "all demand deposits" and should earn interest. Sheriff Lee filed this action against Bank One alleging that Bank One breached its obligation on the Fiscal Agency Contract to pay interest on various accounts, including interest on deposits allocated as "reserves" and "uncollected funds."
In due course, Sheriff Lee filed a Motion for Summary Judgment. The trial court rendered a judgment granting a partial summary judgment in favor of Sheriff Lee, finding Bank One liable for interest on the amount of deposits kept in reserve. In rendering that judgment, the trial court found "there was no factual dispute with regard to the `course of dealing' between the parties." Bank One filed a supervisory writ application in this Court, which was granted. In Harry Lee, Sheriff for the Parish of Jefferson v. The First National Bank of Commerce, 01-C-603 (La.App. 5th Cir.6/4/01), this Court found the matter was not ripe for summary judgment, vacated the judgment and remanded the matter back to the trial court for a trial on the merits. In so doing we stated, "this Court finds that material issues of fact remain in dispute regarding how the fiscal agency contract specified the calculation and payment of interest on the accounts."
Thereafter, Bank One filed a reconventional demand asserting that Sheriff Lee breached the Fiscal Agency Contract by failing to deposit all of the monies under his control with the bank, and by acting in bad faith. Bank One also filed a motion for partial summary judgment, arguing that, because the Fiscal Agency Contract was not put out to bid in accordance with law, and expired on its own terms on November 1, 1990, the terms of the contract could not be enforced past that date, despite agreements by the parties to continue the contract. That motion was denied by the trial court.
The matter went to a trial on the merits. Sheriff Lee testified at trial that he entered into the Fiscal Agency Contract with the bank in 1988 after the legislative auditor indicated that he needed a fiscal agent to be in compliance with the law. Sheriff Lee ordered his staff to advertise an invitation to bid on a Fiscal Agency Contract. He testified that he has no banking experience or expertise, and had no recollection about the bidding process or how the bank was selected. Bank One was ultimately chosen on the recommendation of his staff as to which bank made the best offer. He was not personally involved in the process. However, Sheriff Lee did recall signing the contract with Bank One and extending the term of it because of the good working relationship established between his office and the bank. The terms of the contract remained the same after it was put on a month to month basis. Sheriff Lee made it clear that, although he signed the contract and subsequent letter extending the agreement, he did not personally deal with Bank One. The details of the contract and the everyday banking dealings were accomplished by members of his staff.
*1033 Sheriff Lee stated that he never discussed any of the particulars used for calculating interest according to the contract with anyone at the bank. He merely signed the contracts and other instruments as necessary for his staff to conduct business. Sheriff Lee further stated that Paul Mediamolle (Mediamolle), who was his accounting supervisor, was the staff member who initially administered the contract. After Mediamolle's death, Paul Rivera (Rivera) administered the accounting.
Sheriff Lee was not certain if his department received monthly statements from Bank One. However, Sheriff Lee testified that he was never notified by Mediamolle or anyone else in that department that the bank was not performing its obligations under the contract. Sheriff Lee stated that he was satisfied with the service of the bank during the term of the fiscal agency contract from 1988 to 1997.
During the course of Sheriff Lee's testimony, it was stipulated by the parties that the bank mailed monthly statements on every account to the Sheriff's office. The fact was later verified by testimony of witnesses for the Sheriff's office.
While Sheriff Lee acknowledged that he was the individual ultimately responsible for the accounting in the office, he admitted that he delegated the job to Mediamolle or Jerry Guidroz. Sheriff Lee explained that in 1986 the legislative auditor informed him that the Sheriff's office needed a designated fiscal agent to be incompliance with the law. That prompted Sheriff Lee to request that his staff put out an invitation to bid that ultimately produced the fiscal agency contract at issue herein.
The trial court also heard testimony from Newell Normand (Normand), the Chief Deputy Comptroller for the Sheriff Lee's office. He stated that he began the job in 1992 or 1993 and interacted with Bank One on a daily or weekly basis, relative to deposits, loans, and investment vehicles during the term of the fiscal agency contract. During this time, Mediamolle was the Director of Accounting and was responsible for bank reconciliations. But it was Ray Usher who actually did the bank reconciliations for the period of time the fiscal agency contract was in force. Normand explained that neither he nor Mediamolle is an accountant, so they depended on Glenn Hayes(Hayes), a Bank One representative, and his assistant for advice on fiscal matters. Normand considered the bank a fiduciary and confirmed that a good working relationship existed between the bank and Sheriff Lee's office. Normand explained that the Sheriff's office would deposit all of their funds into various accounts in the bank and would withdraw money as necessary to pay bills, buy equipment or make investments. He stated that Bank One "religiously" sent monthly account analysis statements for every account. Normand testified that during the entire relationship between Sheriff Lee's office and the bank, the bank did not pay interest on uncollected balances or reserves.
Hayes testified that he was in charge of the Institutional Banking department of Bank One throughout the term of the fiscal agency contract. Hayes explained that Bank One set up a new type of account, distinct from a typical customer account, for Sheriff Lee. It calculated interest at the 91-day Treasury bill discount rate plus 25 basis points, less required reserves and FDIC charges. He testified that "required reserves" signified an amount assessed by the FDIC based on the level of deposits within a bank. He further explained that the term "Earnings Credit Allowance" referred to a non-interest bearing account. Hayes stated that this type of account was unique to public bodies and not comparable to a commercial banking *1034 account. The process of establishing an institutional account began with a bid process. Because the account involves public money, a concept called "collateralization" requiring the bank to put up collateral on a dollar for dollar basis for protection of the deposits, is involved. Thus, Bank One could not use Sheriff Lee's deposits to earn money as it could use commercial deposits.
Hayes testified that he was the main contact person for Sheriff Lee's from the end of 1989 until the end of the association between the two parties. He authored the letter which extended the agreement, with the permission of higher bank officials. Nothing regarding the way the interest was calculated or on which accounts it was earned was changed with that letter. He did state that one amendment to the contract occurred in 1993. The nature of the change involved a provision that Bank One would be required to lend 75% of the average deposits to the Sheriff Lee as requested. Because of the vast amount of money involved, Bank One would have exceeded its legal lending limit. In December of 1993, Hayes and Mediamolle met to discuss the issue and agreed to amend the contract to exclude that provision from the contract.
Hayes testified that Sheriff Lee would occasionally purchase investment vehicles to maximize the interest earned on some of the deposits. One such vehicle was LAMP, a state-sponsored liquid investment pool. Hayes explained that he was on the team that originated LAMP, and considered LAMP to be beneficial to the community because it offered public bodies a safe way to earn higher interest.
Regarding the uncollected funds, Hayes explained that for the time period from when a check is first deposited until it clears and the bank actually has the funds, it is considered an "uncollected fund." The monthly account analysis statements sent to Sheriff Lee reflected the uncollected balances. The uncollected balances on Sheriff Lee's accounts were usually very low, because most of the checks deposited were either United States government checks or local checks which would typically clear within twenty-four hours.
The record also contains extensive testimony from various experts who offer differing opinions on general and specific banking procedures, as well as proper accounting practices.
Following trial, the trial court rendered judgment in favor of Sheriff Lee, finding that Bank One had breached its contract with Sheriff Lee and was liable for the unpaid interest on "reserves" and "uncollected funds." It is from this judgment that Bank One appeals.
On appeal, the bank assigns ten errors for our review. The first three relate to the trial court's interpretation of the contract. The next five relate to the time period during which the trial court found that the interest was due. The ninth assignment relates to the bank's reconventional demand for breach of contract and the final assignment relates to the amount of damages.
In considering how the contract should be interpreted, we are guided by the following principles. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract. La. C.C. art.2050.
*1035 As noted by the Louisiana Supreme Court in Campbell v. Melton, 01-2578, (La.5/14/02), 817 So.2d 69:
In interpreting contracts, we are guided by the general rules contained in articles 2045-2057 of the Louisiana Civil Code. The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. Civ.Code arts.2045, 2047; see e.g., Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 93-0911 (La.1994), 630 So.2d 759, 763. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. Civ.Code art.2046.
When appellate review is not premised on any factual findings made by the trial court but is based upon an independent review and examination of the contract on its face, the manifest error rule is inapplicable. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. T.L. James & Co., Inc. v. Sam's Truck Service, Inc., 03-1470 (La.App. 5th Cir.5/26/04), 875 So.2d 977. This case is governed by the law that a contract has the effect of law for the parties, and must be performed in good faith. La. C.C. art.1983.
In applying these precepts to the contract under consideration, we find, as did the trial court, that Paragraph VI of the contract, in dispute herein, providing that Bank One pay interest on "all demand deposits" does not except or exclude an allowance for "reserves" or "uncollected funds" from the bank's obligation to pay interest on Sheriff Lee's accounts. The banking industry term which describes a deposit after deducting an allowance for "reserves" and "uncollected funds" is "net deposits." The Louisiana statutory term for a demand deposit less uncollected funds is "net demand deposit." La. R.S. 6:301(A)(3). The terms "net deposit" or "net demand deposit" do not appear in Paragraph VI, or in any other provision of the contract, to justify the bank's action in deducting "reserves" or "uncollected funds" from the Sheriff's deposits for purposes of calculating the interest due and payable to Sheriff Lee under the contract. Bank One's arguments to the contrary do not conform to Louisiana's statutory definitions. La. R.S. 6:301(A)(1) and La. R.S. 6:301(A)(3).
Moreover, Bank One's own expert, Charles Petrey, acknowledged that the banking industry used the term "net deposit" to describe the amount of a deposit after deducting uncollected funds, reserve requirements and FDIC insurance. Significantly, Marcia Verret, a Bank One employee, reluctantly conceded that Bank One has paid interest on the accounts of the Parish of Jefferson without deducting any allowance for reserves. Thus we find that "all demand deposits," as stated in Paragraph VI of the contract between Sheriff Lee and Bank One, clearly meant all balances of money or its equivalent, including checks in process of collection and funds allocated as "reserves" by the bank, received from Sheriff Lee for which Bank One has given or is obligated to give credit, either conditionally or unconditionally, to his accounts with the bank. The failure of the bank to pay interest on the portions of Sheriff Lee's deposits it classified as "reserves" and "uncollected funds" breached the contract.
Next, Bank One argues that the trial court erred in determining that damages were due Sheriff Lee for the entire time the relationship between them existed, November *1036 1, 1988 through June 30, 1997. Bank One argues alternatively, that after November 1, 1990, the contract between the parties was illegal and unenforceable, because it was not in compliance with fiscal agency bid law, or after January 1, 1996, no contract existed between the parties, or Sheriff's Lee failure to mitigate his damages would reduce any liability of Bank One to zero.
Since we have found that the contract between the parties requiring interest payments on "all demand deposits" included reserves and uncollected funds, the success of Bank One's argument here would necessitate proof by Bank One that Sheriff Lee manifested an intent to modify the contract to incorporate the exceptions. We find no such evidence in the record. The contract's provisions for the payment of interest were never amended throughout the banking relationship that existed between the parties. The fact that Bank One unilaterally implemented a method of interest payment that was not in conformity with the contractual provision does not suffice to prove that Sheriff Lee agreed to the change.
Sheriff Lee signed the contract with Bank One. There is nothing in the record to show that Sheriff Lee agreed to an amendment of the contract or that he authorized anyone else to modify the contract on his behalf. Moreover, Sheriff Lee's internal auditor, Rivera, testified that a person could not determine from an examination of the monthly account analysis whether the interest actually paid by Bank One on the Sheriff's accounts conformed with the provisions of the contract. The statements did not specify any rate or formula to calculate interest. Moreover, Sheriff Lee's silence in response to the breach, does not, without more, equate to acquiescence by the Sheriff to the unilateral change by Bank One.
The fiscal relationship between the parties began in November of 1988. Their agreement was reduced to writing, after bid, on March 17, 1989, retroactive to November 1, 1988. Thereafter, the agreement was renewed, continued, or extended by oral agreement, prior to its expiration, on a month to month basis by mutual agreement of the parties through June 30, 1997. The trial court made a factual finding that the parties agreed to the renewal of the contract prior to its expiration on November 1, 1990 and we conclude that this factual finding is supported by the record and not manifestly erroneous. Furthermore, no changes were made to the agreement by either party concerning the method of calculating interest. Therefore, we find that the fiscal relationship that existed between the parties from November 1, 1988 through June 30, 1997 was in accord with fiscal agency law and other statutes regulating deposits and investment of funds received by Sheriff Lee and that damages were due for the entire banking relationship period.
Next, Bank One argues that the trial court erred in denying its reconventional demand for breach of contract in which it argued that Sheriff Lee did not comply with his contractual obligation to deposit all monies belonging to the Sheriff's Office or under its control with Bank One.
Upon review, we find, as did the trial court, that Sheriff Lee complied with his obligations under the contract. Sheriff Lee deposited all funds he received with Bank One. Thereafter, with Bank One's approval, Sheriff Lee from time to time withdrew some funds for the purpose of purchasing investment securities. Bank One served as Sheriff Lee's purchasing agent for the acquisition of these securities and was paid fees for the service. The *1037 agreement between the parties did not preclude Sheriff Lee from purchasing investment securities with funds he had deposited with Bank One. Bank One's reconventional demand was properly denied by the trial court.
Finally, Bank One argues that the trial court calculation of damages is in error. The trial court awarded damages as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Sheriff Harry Lee, and against the defendant, Bank One, NA, for damages arising out of the defendant's failure to pay interest on the "reserves" and "uncollected funds" portions of the plaintiff's deposits for the principal sum of ONE MILLION FIVE HUNDRED EIGHTY-NINE THOUSAND SIX HUNDRED THIRTY-ONE AND NO/100 DOLLARS ($1,589,631.00), and for judicial interest on the principal sum consisting of ONE MILLION TWO HUNDRED SEVENTEEN THOUSAND EIGHT HUNDRED THRITY-THREE AND NO/100 DOLLARS ($1,217,833.00) through July 31, 2003, and continuing to accrue thereafter on the principal sum until the award is paid in full.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Sheriff Harry Lee, and against the defendant, Bank One, NA, for damages arising out of the miscalculation of interest payment on deposits for the principal sum of ONE HUNDRED THOUSAND FIVE HUNDRED TEN AND NO/100 DOLLARS ($100,510.00), and for judicial interest on the principal sum thereon consisting of TWENTY-EIGHT THOUSAND FOUR HUNDRED FORTY-SEVEN AND 32/100 ($28,447.32) through December 31, 2002, and continuing to accrue thereafter on the principal sum until the award is paid in full.
In brief to this Court, Bank One criticizes the damage amounts arrived at and testified to by Sheriff Lee's expert, S. David Kushner (Kushner), and accepted by the trial court in setting damages. The trial judge expressly stated in her reasons for judgment: "[T]he expert testimony of S. David Kushner was knowledgeable, credible and assisted the court to understand the damages evidence and to determine the quantum of damages owed to Sheriff Lee by the bank. Although the appearance of certain previously unavailable account records required Mr. Kushner to adjust some of his damage estimates, his testimony remained reliable to the Court." While Bank One points out some discrepancies in Kushner's figures on the miscalculation of interest as well as on the interest due on reserves and uncollected funds, we do not find the damage award supported by his testimony to be manifestly erroneous.
Kushner was forced to make adjustments to his calculations because of the appearance of some bank records that had previously been missing. While some of those records necessitated a recalculation that favored Bank One, other records would require a recalculation in excess of the favorable amount, against Bank One. Since Bank One is the only party to have appealed, any ruling rendered by this Court cannot disadvantage the appellant. Moreover, although Bank One argued critically of Kushner's damage estimates, it offered no record citation of testimony or argument to support a more accurate damage award. Therefore, finding no clear error in the trial court calculations, we affirm the award of damages to Sheriff Lee as calculated by the trial court.
*1038 Based on the foregoing, we affirm the judgment of the trial court in favor of Sheriff Lee and against Bank One, finding that Bank One breached the agreement that existed between the parties from November 1, 1988 through June 30, 1997, and awarding damages in the amount specified therein. Costs of appeal are to be paid by Bank One.
AFFIRMED
GOTHARD, J., dissents with reasons.
GOTHARD, J., dissents with reasons.
I dissent from the majority view. In my view the majority opinion properly states, but misapplies the applicable law.
Initially, I note that the judgment of the trial court misstates the terms of the agreement. The fiscal agreement provided that interest would be paid on "all demand accounts," not "all accounts" as the trial judgment states. The omission of the term "demand" changes the entire meaning of the words of the contract.
This case is governed by the law that a contract has the effect of law for the parties, and must be performed in good faith. La. C.C. Art.1983. Recently, in Corbello v. Iowa Production, 02-0865 (La.2/25/03), 850 So.2d 686 the Supreme Court restated the basic principles of contract law:
Since a contract establishes the law between the parties, the purpose of contract interpretation is to determine the common intent of the parties. The meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence. When a contract is subject to interpretation from the four corners of the instrument, without the necessity of extrinsic evidence, that interpretation is a matter of law. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties' intent. Further, parties are free to contract for any object that is lawful, possible, and determined or determinable.
(citations omitted)

Id. 850 So.2d at 693
The judiciary's role in interpreting contracts is to ascertain the common intent of the parties to the contract. La. C.C. Art.2045.
It is acknowledged by both parties that the contract at issue herein was a unique contract, written at Sheriff Lee's request, to suit his unique needs. It is clear from the record that the bank regularly sent detailed statements on each account to the Sheriff and, according to all testimony of both parties, those statements were received and not contested. It is also clear that the bank never paid interest on uncollected amounts or on reserves; and according to the testimony offered at trial that was always its intent. Further, I find nothing in the plaintiff's testimony to contradict those facts. There was no evidence presented to prove that plaintiff expected to be paid interest on these accounts, or ever question the way interest was paid during the entire nine years of the contractual relationship. The essence of plaintiff's testimony is that the relationship between it and the bank was good and that the bank was very accommodating in re-inventing its product to suit the Sheriff's needs.
I believe the clear intent of the parties can be decided by the testimony of the parties. The expert evidence relied upon by the majority is, to my mind, irrelevant to the matter at hand. This is not a normal commercial banking contract. It is a unique banking account set up for a public body by a specific contract. Therefore, *1039 the expert testimony as to what is normally done in commercial banking contracts is not relevant as to what the intent of the parties was in this particular case. I find that once both parties testified that the bank set up a unique bank account exactly as Sheriff Lee requested, and all parties regularly reviewed the statements with approval, never questioning the way interest was paid on the account, we have established the clear intent of the parties and no further evidence is necessary.
Even assuming arguendo, that expert testimony was necessary to determine the intent of the parties, the expert testimony offered herein, relates to general commercial banking practices and does not offer any help to us in determining the intent of the parties as to this specially constructed bank account contract.
For the foregoing reasons, I would reverse the trial court.
NOTES
[1] Suit was originally filed against FNBC. Subsequently, Bank One was substituted as the Defendant in place of FNBC.