# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1301


**REBA CAMPBELL AND BRENT CAMPBELL**

**VERSUS**

**EVANGELINE PARISH POLICE JURY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 70506-A
HONORABLE J. LARRY VIDRINE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, James T. Genovese, and John E. Conery, Judges.


**AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.**


**Jonathan C. Vidrine**
**Post Office Drawer 1019**
**Ville Platte, LA 70586**
**(337) 363-2772**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Reba Campbell**
    **Brent Campbell**

**Michael W. Landry**
**Assistant Attorney General**
**One Lakeshore Dr., Suite 1200**
**Lake Charles, LA   70629**
**(337) 491-2880**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **State of Louisiana, Department of Health and Hospitals**

**Marcus L. Fontenot**
**Assistant District Attorney**
**Post Office Drawer 780**
**Ville Platte, LA   70586**
**(337) 363-3438**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Evangeline Parish Police Jury**

**AMY, Judge.**

The plaintiff contends that she slipped on a sidewalk outside the Evangeline Parish Medicaid Office and was injured as a result. The plaintiff and her husband filed suit against the owner of the building, the Evangeline Parish Police Jury, and the lessee of the building, the State of Louisiana, Department of Health and Hospitals. The lease between the Police Jury and the State contained an indemnity provision, and the plaintiffs filed a petition for declaratory judgment seeking a determination of whether the Police Jury would be responsible for damages pursuant to the indemnity provision or whether the State was responsible for damages because its employees assumed responsibility for the sidewalk. The trial court found that the State failed to notify the Police Jury about the condition of the sidewalk and that the State was liable for the plaintiff's injuries. The trial court also dismissed the Police Jury from the litigation. The State appeals. We affirm in part, reverse in part, and remand for further proceedings.

### Factual and Procedural Background

According to the petition, Reba Campbell was walking on the sidewalk adjacent to the Evangeline Parish Medicaid Office when she slipped on a black or greenish area of the sidewalk and fell. Mrs. Campbell alleges that she was injured as a result. Both Mrs. Campbell and her husband, Brent Campbell, filed suit against the Evangeline Parish Police Jury, as the owner of the Medicaid Office building, and the State of Louisiana, Department of Health and Hospitals, as the lessee of the building. In its answer, the State asserted a cross-claim against the Police Jury on the basis that the lease between the State and the Police Jury provided that the Police Jury indemnify the State for any damages assessed due to

the Police Jury's negligence and that the lease required the Police Jury to maintain the sidewalks.

Thereafter, the plaintiffs filed a petition for declaratory judgment, seeking a determination of the rights of the parties under the lease, specifically whether the Police Jury was responsible under the provisions of the lease or whether the State had assumed responsibility for the sidewalks due to the actions of its employees. There was a hearing on that issue, at which the State's request for involuntary dismissal was denied. Subsequently, the trial court found that, although the Police Jury was responsible for maintaining the building, the State had not notified the Police Jury about this particular problem. Further, the trial court found that the State "did not take sufficient steps to insure the safety of its patrons who frequented or used the Medicaid offices[.]" Thus, the trial court determined that the State was responsible to the plaintiffs for Mrs. Campbell's injuries. The trial court also granted the Police Jury's oral motion for judgment as a matter of law and dismissed the Police Jury from the suit.

The State appeals, assigning as error:

1. The trial court was manifestly erroneous in determining that the State as lessee is responsible for the injuries resulting to Campbell.

2. The trial court was manifestly erroneous in denying the state's motion for judgment as a matter of law at the close of plaintiff's case.

3. The trial court was manifestly erroneous in determining that the police jury is not responsible for injuries caused by any defects in its premises which caused harm to Campbell.

4. The trial court committed legal error in dismissing a party after a hearing noticed for the limited purpose of hearing a petition for declaratory judgment.

5. The trial court committed legal error in dismissing the state's cross claim for indemnity as there was no evidence to support any

2

conclusion other than the agreement between the parties to the lease was that the police jury defendant indemnify the state against any claim for damages resulting from the police jury's negligence in failing to maintain the premises.

## Discussion

*Declaratory Judgment*

The plaintiffs requested a declaratory judgment addressing whether the State or the Police Jury was liable to the plaintiffs for Mrs. Campbell's injuries.[1] Pursuant to La.Code Civ.P. art. 1871, "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed." Further, La.Code Civ.P. art. 1872 states that:

> [a] person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Thus, the function of a declaratory judgment is to establish the rights of the parties or to express the court's opinion on a question of law without ordering any relief. *MAPP Constr., LLC v. Amerisure Mut. Ins. Co.*, 13-1074 (La.App. 1 Cir. 3/24/14), 143 So.3d 520. "Trial courts are vested with wide discretion in deciding whether or not to grant or refuse declaratory relief." *In re Interment of LoCicero*, 05-1051, p. 4 (La.App. 4 Cir. 5/31/06), 933 So.2d 883, 886. However, where the judgment would terminate an uncertainty or controversy which gave rise to the proceeding, the trial court must render a declaratory judgment. *Id. See also* La.Code Civ.P. art. 1876. Accordingly, the appellate court is limited to a

---

[1] We observe that, although styled as a petition for declaratory judgment seeking an interpretation of the lease provisions, the proceedings in this matter are more akin to a bifurcated bench trial on the issue of liability. *See* La.Code Civ.P. art. 1915.

determination of whether the trial court abused its discretion in its grant of or refusal to render a declaratory judgment. *Id.*

Although the trial court's determination about whether to issue a declaratory judgment is subject to the abuse of discretion standard, the judgment itself is still subject to the appropriate standard of review—questions of law are reviewed de novo and questions of fact are subject to the manifest error/clearly wrong standard of review. *See Ranger Ins. Co. v. Shop Rite, Inc.*, 05-452 (La.App. 5 Cir. 1/17/06), 921 So.2d 1040.

*Responsibility of the Police Jury for Maintenance*

Here, the first issue the trial court was called upon to resolve was whether the indemnification term of the lease agreement between the State and the Police Jury was implicated. In order to resolve this issue, the trial court necessarily had to determine a) under what circumstances the Police Jury was responsible for maintenance of the sidewalk outside the Medicaid building, and b) whether the Police Jury was negligent in that maintenance.[2]

In order to resolve the first question, the court must apply the general principles of contract interpretation. As stated by the supreme court in *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055, pp. 5-6 (La. 3/19/13), 112 So.3d 187, 192 (footnotes omitted):

> "Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined,

---

[2] We observe that, for the purposes of this hearing, the parties did not argue that Mrs. Campbell did not actually suffer a slip and fall accident. Similarly, the existence of any injuries and their causation was not at issue at this hearing.

4

therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. "Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

Further, we note that "[w]hen a trial court's interpretation of a contract is not based upon any factual findings, but, rather, is based upon a review of the contract's language, the manifest error standard of review does not apply." *Derouen v. Nelson*, 09-467, p. 3 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079, 1082. Here, our review of the record indicates that, although the trial court made findings of fact in applying its interpretation of the contract to the issue of whether the indemnification clause of the contract was implicated herein, the trial court's interpretation of the lease was made based on a review of the contract's language.

The lease between the State, as lessee, and the Police Jury, as lessor, was entered into evidence at trial and provides both that the Police Jury is responsible for maintenance of the building, including the exterior and parking areas, and that the Police Jury "shall be responsible" for damages that are the result of the Police Jury's negligence in maintaining the property. Specifically, with regard to maintenance and notification, the lease provides that:

> Should Lessor fail to keep the leased premises in good and tenantable condition, to make any of such repairs, replacements or changes, or to do painting or wall covering within thirty (30) days after written notice from Lessee of the necessity therefore, or should

Lessor commit any other breach of the lease terms and conditions, the Lessee may at its option, with approval of the Division of Administration, correct the same and deduct the cost thereof from the rental payments, or Lessee may, with approval of the Division of Administration, quit and surrender possession of the premises without further liability to Lessor hereunder, upon sixty (60) days written notice. Provided, however, that in the event of conditions requiring immediate maintenance and/or repair, including but not limited to flooding, roof leaks, failure of electrical system, etc., Lessee may at its option, and with notice to the Division of Administration, correct the same and deduct the cost thereof from the rental payments after reasonable attempt to contact the Lessor.

The lease further provides that:

Lessor agrees to do at Lessor's expense such painting and other maintenance to the exterior of the building as is necessary to maintain the building in good condition and appearance. Exterior clean-up shall be maintained constantly to insure that areas outside of leased premises, including parking facilities are trash-free. All grass and weeds shall be cut weekly during growing season and otherwise as needed. Shrubberies shall be maintained in a neat condition, with pruning as necessary. Lessors shall have sole responsibility for all maintenance and repair to the heating and air conditioning systems, plumbing systems (including plumbing fixtures), sewerage disposal systems (including septic tanks), electrical systems, light fixtures (including replacement of light bulbs and fluorescent tubes, and all other equipment furnished by Lessor.

With regard to the Police Jury's responsibility for maintenance and repairs, the lease provides that:

The Lessor shall be responsible for maintaining the entire building and site in good condition throughout the term of the lease. Lessor shall make all such repairs to the premises as may become necessary because of breakage or other damages not attributable to the negligence of the Lessee, its agents, or its employees. Lessor shall be responsible for any damages to Lessee's employees, agents, invitees, visitors, and property and/or equipment that are a result of Lessor's negligence to properly maintain the premises.

The State contends that the trial court erred in interpreting the lease provisions to require that the State identify dangerous conditions and notify the Police Jury about them for repair. The trial court found that the lease required the Police Jury to correct any problems once they were reported to the Police Jury by

6

State employees. We also note that the provisions of the lease require the Police Jury to remedy any maintenance problems reported by the State within thirty days and that, if the Police Jury failed to do so, the lease permits the State to repair those problems on their own. Further, we observe that the lease provides that the Police Jury is responsible for any damages that are a result of the Police Jury's negligence in properly maintaining the premises.

*Liability of Police Jury*

Thus, the heart of the dispute is whether the Police Jury was negligent in its maintenance of the building exterior such that the indemnification portion of the lease would be implicated. The liability of public entities for damages caused by the condition of buildings within their care and custody is delineated by La.R.S. 9:2800, which states, in relevant part:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> . . . .
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
>
> D. Constructive notice shall mean the existence of facts which infer actual knowledge.

Thus, in order to recover from a public entity for damages caused by a thing, the plaintiff must prove 1) custody or ownership of the defective thing by the public entity; 2) that the defect created an unreasonable risk of harm; 3) that the public entity had actual or constructive notice of the defect; and 4) that the public

7

entity failed to take corrective action within a reasonable time. *Chambers v. Village of Moreauville*, 11-898 (La. 1/24/12), 85 So.3d 593. In determining whether a condition is unreasonably dangerous, the trier of fact should balance the gravity and risk of harm against the cost and feasibility of repair. *Id.*

With regard to defective sidewalks, there is no fixed test for determining whether a defect is unreasonably dangerous; instead, the determination requires "the consideration of whether or not the sidewalk was maintained in a reasonably safe condition for persons exercising ordinary care and prudence." *Id.* at 598. Although public entities are responsible for maintaining their sidewalks in a reasonably safe condition, they are neither required to maintain the sidewalks in perfect condition nor are they the insurers of pedestrians' safety. *Id.*

In this matter, the testimony and evidence submitted at the trial was that Mrs. Campbell slipped and fell on a black or greenish substance on the sidewalk when she was travelling from the health unit to the Medicaid office. According to Mrs. Campbell, after she turned a corner on the sidewalk, she slipped on some "slime" that had accumulated near a flower bed. After she managed to get up, she went into the Medicaid building and informed an employee that she had fallen.

Ms. Ruby Fontenot also testified. According to Ruby, she was the senior employee in the office on the day that Mrs. Campbell fell. After she was informed that Mrs. Campbell had slipped on the sidewalk, she took pictures of Mrs. Campbell and filled out an incident report. Ruby testified that she did not see anything visible on Mrs. Campbell's person that indicated that she had fallen. According to her testimony, Ruby was not aware of anyone else that had slipped. Ruby stated that she went outside to investigate the area where Mrs. Campbell said she fell and that she saw an area on the sidewalk that was black but did not appear

8

to be slippery.  Further, Ruby stated that there were no periodic inspections of the sidewalk and that it was rare for State employees to go on that side of the building. Ruby testified that she had not called the Police Jury about the sidewalk.

Another State employee, Deborah Fontenot,[3] testified that she was the supervisor at the Medicaid office, but that she was out of the office on the day that Mrs. Campbell fell.  According to Deborah's testimony, it was her understanding that the Police Jury was responsible for maintenance of the building and if there were any problems that needed to be remedied, she would contact Douglas Deville at the Police Jury.  Deborah testified that she would walk around the building approximately once a week to check for safety problems.

With regard to slippery substances on the exterior of the building, Deborah testified that she was not aware of any slip and falls since the Medicaid office moved into the building in 1998.  However, she did testify that she once slipped, although apparently did not fall, on a dark substance in a gutter.  Deborah testified that she contacted the Police Jury about the substance and was told to pour bleach on it.  According to her testimony, pouring bleach on the substance fixed the problem, although it would come back occasionally.  Deborah further testified that she put bleach around the gutters on the front of the building until she ruined an outfit because of the bleach, and Mr. Deville told her that the maintenance person would take care of it.  However, Deborah testified that she did not put bleach on any black areas because they were dry.  Deborah testified that she did not think the black areas were hazardous or posed a threat to anyone.

Mr. Deville, an employee of the Police Jury, testified that whenever repairs were needed at the Medicaid building, a State employee would contact him, and he

---

[3] Deborah Fontenot's name is also spelled as "Debra" in the record.

would ensure that the appropriate technician was sent to repair the problem. According to Mr. Deville, this was normally accomplished by a phone call, not in writing. When he was informed about Mrs. Campbell's fall, he had a janitor go to the Medicaid building and clean the sidewalk, and he inspected the area later. Mr. Deville testified that the substance appeared to be mildew and that it apparently occurred as a result of a drip in the gutter. According to Mr. Deville, there was another area near the downspouts that was similar to this one; Mr. Deville directed the janitor to "keep an eye" on that area. Mr. Deville thought he subsequently sent someone to clean the gutters. Mr. Deville also testified that someone went out every two weeks from March to October to mow the grass and maintain the exterior.

When asked whether he thought the State should have notified him about the mildew area, Mr. Deville was unsure. He testified that he wouldn't have considered the spot a problem or a "big issue," but, when he put his foot on it, he could see that it was "kind of slippery" and that someone had actually slipped on it. Mr. Deville also testified that he never directed anyone from the State to buy bleach and correct a problem themselves.

Finally, Paul David Coleman, an expert hired by the State, testified about the slip resistance of the parking lot and what he considered a comparable spot to where Mrs. Campbell's accident occurred. Mr. Coleman testified that he used a machine designed to measure the slip resistance of a surface to determine the friction co-efficient of the surface. According to Mr. Campbell, anything that has a friction co-efficient of 0.5 or above is considered slip-resistant. A "very slippery" surface would have a friction co-efficient of 0.17. Mr. Coleman testified that the area where the accident occurred had been cleaned, so he tested an area near the

10

gutters that had signs of fungal growth and an area in the parking lot that was grimy, wet, and oily-looking. According to his testimony, all of the surfaces he tested were slip resistant when both dry and wet, including the spot near the gutters.

Given this evidence, the trial court found that the Police Jury was responsible for remedying problems on the Medicaid building premises after those problems were reported to the Police Jury by the State. However, this particular problem had not been reported, and the Police Jury was unaware of it. Although the trial court noted that a State employee walked the perimeter of the building occasionally, the trial court found that the State did not take sufficient steps to insure the safety of its patrons. Thus, the trial court found that the State was liable for any damages suffered by Mrs. Campbell, not the Police Jury.

The trial court's judgment and reasons for judgment concluded that the State was "liable" for Mrs. Campbell's damages. Thus, the trial court must have necessarily found that the State had custody of the sidewalk, that the defect was unreasonably dangerous, that the State had actual or constructive notice of the defect, and that it failed to take corrective action within a reasonable time. Our review of the record indicates that the parties apparently did not contest whether the State had custody of the sidewalk.

After reviewing the record, we find no error in the trial court's apparent conclusion that Mrs. Campbell satisfied the elements required by La.R.S. 9:2800 with regard to her premises liability claim against the State. The evidence presented at trial was that Mrs. Campbell was on premises leased by the State when she slipped on a mildew or moldy substance that had accumulated on the sidewalk as a result of a leak in the gutter. *See Trahan v. Acadiana Mall of*

11

*Delaware*, 14-232 (La.App. 3 Cir. 10/1/14), 149 So.3d 359.  Further, the evidence suggested that the substance developed over a period of time and that it was easily remedied by applying bleach to the area.  *Cf. Chambers*, 85 So.3d 593.  We note that, although the State's expert testified that he did not find an area in the parking lot that was not slip-resistant, he was unable to test the actual surface upon which Mrs. Campbell slipped.

We further find no error in the trial court's determination that the indemnity provisions of the lease were not implicated because the State did not notify the Police Jury about the defective portion of the sidewalk.  As previously discussed, the lease requires the Police Jury to make repairs within thirty days of notification by the State, and, if the Police Jury fails to do so, the State is permitted to make the repairs itself under the terms of the lease.  Further, the Police Jury is only responsible for damages to the State's patrons when the Police Jury was "negligent."  Here, the record indicates that the trial court found that there was no notification by the State to the Police Jury that repairs were needed.  Thus, the notice requirement of La.R.S. 9:2800 was not satisfied.

Accordingly, we find that the State's assignments of error concerning the trial court's interpretation of the lease and application of those findings as to liability and indemnification are without merit.

*Involuntary Dismissal*

The State also assigns error to the trial court's denial of the State's motion for judgment as a matter of law asserted at the close of the plaintiffs' case. Pursuant to La.Code Civ.P. art. 1672(B),

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not

> granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In determining whether to grant a motion for involuntary dismissal, the trial court has much discretion. *Phillip v. Univ. Med. Ctr.*, 97-302 (La.App. 3 Cir. 4/22/98), 714 So.2d 742, *writ denied*, 98-2143 (La. 11/13/98), 730 So.2d 938. Further, a trial court's judgment on a motion for involuntary dismissal should not be reversed absent manifest error. *Guidry v. City of Rayne Police Dep't*, 09-664 (La.App. 3 Cir. 12/9/09), 26 So.3d 900. Having reviewed the record and finding no manifest error in the trial court's ultimate findings of fact, we necessarily conclude that the trial court was not manifestly erroneous in refusing to grant the State's motion for involuntary dismissal.

*Dismissal of the Police Jury*

Finally, the State argues that the trial court erred in dismissing the Police Jury. We find merit to this contention. At the close of the trial on the petition for declaratory judgment, the trial court requested that the parties submit additional briefs concerning their positions. At that time, the Police Jury made an oral motion for judgment as a matter of law, which was initially granted by the trial court. The State objected on the basis that the matter before the court was the petition for declaratory judgment, and the trial court directed the Police Jury to file an appropriate motion. However, the record does not contain a written motion submitted by the Police Jury seeking dismissal. Instead, the trial court's written reasons for judgment and accompanying judgment state that the Police Jury is dismissed from this case.

13

Louisiana Code of Civil Procedure Article 1871 states, in relevant part, that "[c]ourts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . . [T]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Conventional judgments embody two elements—the ascertainment or declaration of rights and a specific award of relief. *MAPP Constr.*, 143 So.3d 520. *See also* La.Code Civ.P. art. 1871, Official Revision Comments. A declaratory judgment only embodies the former. *Id.* Accordingly, a declaratory judgment that makes a specific award of relief goes beyond the scope of a declaratory judgment. *Id.*

This is not to say that a party may not seek further relief based upon a declaratory judgment. To the contrary, La.Code Civ.P. art. 1878(A) expressly provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." However, Article 1878(A) also requires that "the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith." Additionally, an award of supplemental relief may be appropriate where the pleadings stipulate the supplemental relief sought. *State through La. Riverboat Gaming Comm'n v. La. State Police Riverboat Gaming Enforcement Div.*, 95-2355 (La.App. 1 Cir. 8/21/96), 694 So.2d 316.

Our review of the record reveals that the judgment in this matter awards relief in the form of a dismissal. However, that relief was not requested prior to the hearing, and the State, an adverse party, was not given the opportunity to show why that relief should not be granted. Accordingly, we reverse the trial court's

judgment insofar as it dismisses the Police Jury from this action and remand for further proceedings consistent with this opinion.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed as to the declaration that the State of Louisiana, Department of Health and Hospitals is liable for the injuries suffered by the plaintiff, Reba Campbell. The portion of the trial court's judgment dismissing the Evangeline Parish Police Jury is reversed and remanded for further proceedings. Costs of this matter are assessed equally to the State of Louisiana, Department of Health and Hospitals; the Evangeline Parish Police Jury; and the plaintiffs, Reba Campbell and Brent Campbell.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.**