McCALLUM, J.
Derek Martin appeals from a judgment of partition which incorporated the findings of a declaratory judgment. The declaratory judgment determined that increases in value of his separate property during the marriage, namely his retirement account and a closely-held corporation in which he owned an interest, were community property.
We reverse the declaratory judgment in part, vacate the judgment of partition, and remand.
FACTS
Derek Martin and Anna Martin were married on February 14, 2004. Before and during the marriage, Derek worked for P & M Services, Inc., a closely-held family corporation in which he owned a 30% interest. During this time, Anna worked as a *987 public school teacher. P & M performed plumbing and industrial maintenance work. Prior to the marriage, Anna and Derek each had their own retirement account. Anna's account was through her employment as a public school teacher. According to Derek's brief, each party made contributions to their respective accounts before and during the marriage.
The day before they married, Derek and Anna executed a marriage contract ("contract"), which states, in part:
In the event the parties remain married they shall be subject to the provisions of the Louisiana Revised Civil Code which establish a community of acquets and gains between husband and wife. However, should the parties divorce, Derek Van Martin shall be entitled to all of his interest in P & M Services, Inc., and all of his interest in his retirement account. Anna Parker Frederick will be entitled to receive all funds in her public school employee's retirement account. Only the remaining property owned by the parties will be considered community property in the event of a divorce.
A petition for divorce was filed on February 21, 2008, with the judgment of divorce rendered on May 15, 2009. On June 8, 2009, Derek filed a petition to partition the community property. Three years later, the court appointed a special master to assist the court regarding disputes that Anna and Derek had concerning the value of reimbursement claims, the allotment of property, and the appraisal of community property.
On February 5, 2013, Anna filed a petition for declaratory judgment. Her petition for declaratory judgment was given the same docket number as the petition for partition. Anna argued that the phrase "all of his interest" in the contract did not mean the community's interest, and that the contract did not reserve to Derek any increase in the value of P & M or of his retirement account during the marriage. She further contended that Derek had no interest in her retirement account under the terms of the contract.
A hearing on the petition for a declaratory judgment was held on May 29, 2013, during which the trial judge told the parties that after examining the record, he did not see the need for any testimony. On July 30, 2013, the trial court rendered judgment declaring that any increases in value of P & M and of Derek's retirement account during the existence of the marriage belonged to the community, while any increase in value of Anna's public school retirement account during the marriage was her separate property.
Derek filed a motion for new trial on August 22, 2013. The motion was denied on November 1, 2013. Derek filed a petition for a devolutive appeal from the declaratory judgment on January 10, 2014. On April 23, 2014, this court entered an order of dismissal on the grounds that the declaratory judgment was a partial judgment that was not designated as a final judgment under La. C.C.P. art. 1915(B) and thus not appealable. Anna's motion to dismiss the appeal was denied as moot.
A hearing before the special master was held on October 19, 2014. On January 28, 2015, the special master provided her written recommendations and findings of fact. She began by summarizing the contract before quoting from the declaratory judgment. She then made her recommendations and findings of fact, including calculating the amount of the increase in value of Derek's retirement account during the marriage, and then determining what Anna was entitled to under the declaratory judgment. She recognized that under the terms of the declaratory judgment, Anna was entitled to one-half of the increase in the value of Derek's interest in P & M
*988 during the marriage. However, the special master was unable to determine the increase in value of P & M without the assistance of a certified public accountant ("CPA").
Both parties objected to the recommendations and findings of fact. In particular, Derek objected to the two determinations that were made in accordance with the declaratory judgment. He added that he felt the court had erred in its ruling in the declaratory judgment, and he objected to any ruling in accordance therewith.
On June 11, 2015, the court agreed to the appointment of a CPA to determine the value of any increase in the stock of P & M. The CPA's report was prepared on September 26, 2017.
On January 10, 2018, the court rendered a written judgment of partition. The court adopted the recommendations of the special master and the CPA's valuation of the increase in value of P & M and made them a part of the judgment of partition.
Derek has appealed from the judgment of partition.
DISCUSSION
Derek argues on appeal that the trial court erred in: (i) ruling that any increase in value in Derek's retirement account during the marriage was community property; (ii) ruling that any increase in value of Derek's share of P & M during the marriage was community property; and (iii) casting Derek with all court costs.
Anna has filed a motion to dismiss the appeal. First, she contends that the appeal should be dismissed pursuant to La. C.C.P. art. 2162 because Derek has no right to appeal the declaratory judgment. She argues that he should have requested in 2013 that the trial court designate the declaratory judgment as a final, appealable judgment. She further asserts that Derek could have taken an appeal from the declaratory judgment after the judgment of partition was rendered. Second, she argues that Derek's brief failed to comply with URCA 2-12.4, which requires that the statement of jurisdiction, assignments of error, issues for review, and argument are to be directed toward the judgment appealed, not the declaratory judgment. Accordingly, she maintains that the brief should be treated as if it had never been filed.
Derek's earlier appeal of the declaratory judgment was dismissed by this court because the judgment was not designated as a final judgment under La. C.C.P. art. 1915(B) and, thus, was not appealable.
La. C.C.P. art. 1915(B)(1) states that when a court renders a partial judgment as to one or more but less than all of the claims, demands, issues, or theories against a party, the judgment shall not constitute a final judgment unless designated as a final judgment by the court after an express determination that there is no just reason for delay.
We are mindful that La. C.C.P. art. 1871, which governs the scope of declaratory judgments, states that a "declaration shall have the force and effect of a final judgment or decree." Nonetheless, while the petition sought a declaratory judgment and the judgment was captioned as a "declaratory judgment," the declaratory judgment was essentially an interlocutory judgment as it did not resolve all of the issues before the court related to the partition of the community property. In addition, the declaratory judgment ultimately served as a basis for the findings by the special master which were adopted by the court in the judgment of partition. The judgment of partition was the final judgment as it adjudicated all of the claims, rights, and liabilities of Anna and Derek. As such, absent the determination and designation by the *989 court pursuant to La. C.C.P. art. 1915(B), the declaratory judgment was not immediately appealable and the earlier appeal was dismissed by this court.
A judgment may be interlocutory or final. La. C.C.P. art. 1841. The Louisiana Supreme Court has held that an interlocutory ruling is reviewable on appeal of a final, appealable judgment in the case. See Louisiana High School Athletics Ass'n, Inc. v. State , 2012-1471 (La. 1/29/13), 107 So.3d 583 ; People of the Living God v. Chantilly Corp. , 251 La. 943, 207 So.2d 752 (1968).
In general, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Judson v. Davis , 2004-1699 (La. App. 1 Cir. 6/29/05), 916 So.2d 1106, writ denied , 2005-1998 (La. 2/10/06), 924 So.2d 167.
The appeal of the judgment of partition necessarily included any earlier interlocutory rulings, including the declaratory judgment. Therefore, a review of the declaratory judgment is now properly before this court. Finally, we do not discern any noncompliance with URCA 2-12.4. While the judgment of partition provides the basis for this court's jurisdiction, that judgment encompassed the declaratory judgment which is the true focus of the appeal. Accordingly, the motion to dismiss the appeal lacks merit and is denied.
Standard of review
Although a trial court's determination about whether to issue a declaratory judgment is subject to the abuse of discretion standard, the judgment itself is still subject to the appropriate standard of review. Campbell v. Evangeline Parish Police Jury , 2014-1301 (La. App. 3 Cir. 5/6/15), 164 So.3d 408, writ denied , 2015-1067 (La. 9/11/15), 176 So.3d 1043.
A trial court's factual findings are entitled to great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO , 549 So.2d 840 (La. 1989). However, the interpretation of a contract generally presents a question of law that is subject to a de novo review on appeal. Ford v. Lester , 48,932 (La. App. 2 Cir. 5/14/14), 139 So.3d 22, writ denied , 2014-1567 (La. 11/7/14), 152 So.3d 175.
When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law. Prejean v. Guillory , 2010-0740 (La. 7/2/10), 38 So.3d 274.
The trial court heard no testimony and made its findings largely based upon the language of the contract. The only fact outside the contract that it considered was that the contract was prepared by Derek's attorney. Accordingly, the court's finding is subject to de novo review by this court.
Rules of interpretation
Civil fruits are defined in La. C.C. art. 551 as "revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions."
La. C.C. art. 2339 provides that the natural and civil fruits of the separate property of a spouse are community property. However, a spouse may reserve them as his or her separate property by "a declaration made in an authentic act or in an act under private signature duly acknowledged."
A matrimonial regime may be legal, contractual, or partly legal and partly contractual.
*990 La. C.C. art. 2326. Matrimonial agreements are governed, in part, by La. C.C. arts. 2328 and 2329. Article 2328 provides:
A matrimonial agreement is a contract establishing a regime of separation of property or modifying or terminating the legal regime. Spouses are free to establish by matrimonial agreement a regime of separation of property or modify the legal regime as provided by law. The provisions of the legal regime that have not been excluded or modified by agreement retain their force and effect.
Article 2329 provides:
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. Prejean , supra .
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Prejean , supra . When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. Id. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Amend v. McCabe , 1995-0316 (La. 12/1/95), 664 So.2d 1183. Most importantly, a contract must be interpreted in a common sense fashion, giving to the words of the contract their common and usual significance. Prejean , supra .
The words of a contract must be given their generally prevailing meaning; words of art and technical terms must be given their technical meaning when the contract involves a technical matter. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049.
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La. C.C. art. 2053. In case of doubt that cannot *991 be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art. 2056.
Under Louisiana law, when there is any doubt about the meaning of an agreement, the court must ascertain the common intention of the parties, rather than adhering to the literal sense of the terms. The trial court's initial inquiry should be whether the words of the contract clearly and explicitly set forth the intent of the parties. This methodology limits the interpretation of a contract to the internal language of the contract itself. If this intent cannot be adequately discerned from the contract itself, the court may then consider evidence as to the facts and circumstances surrounding the parties at the time the contract was made. Miller v. Miller , 44,163 (La. App. 2 Cir. 1/14/09), 1 So.3d 815.
Reasons for judgment
The court ruled that any increase in the value of P & M or of Derek's retirement account during the existence of the community was community property. The court further ruled that any increase in the value of Anna's retirement account during the existence of the community remained her separate property.
The court began its analysis by concluding that the contract did not contain a declaration of reservation of fruits of separate property pursuant to La C.C. art. 2339. The court then looked to the articles on interpretation of contracts found in La. C.C. arts. 2045, et seq.
After examining La. C.C. art. 2046, the court concluded that by the contract's explicit language, the increase in value of P & M and of Derek's retirement account were community property.
The court then noted that according to art. 2047, words of a contract must be given their generally prevailing meaning. The court reasoned that "all of his interest" meant what it said, and it did not include any increase in Derek's interest during the existence of the community. The court further reasoned that "all funds" in Anna's school retirement account meant what it said.
The court continued, stating that: (1) it did not find that the words were susceptible of different meanings as contemplated by art. 2048 ; (2) it did not find that the provision was susceptible of different meanings as contemplated by art. 2049 ; (3) the meaning did not change when the provisions were interpreted in light of each other under art. 2050 ; (4) La. C.C. art. 2051 did not apply because the contract was not worded in general terms;[1] and (5) La. C.C. art. 2052 did not apply because the parties intended a contract to cover a specific situation, not a contract of a general scope.[2]
The court noted that La. C.C. art. 2053 provides that a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. The court stated that even though the contract did not contain a doubtful provision, the nature of the contract, equity and *992 usages would not change its specific language. Moreover, the conduct of the parties before and after forming the contract could not be considered because there was no such evidence before the court. While the court recognized that Derek argued the court should consider the intent of the parties, the matter was submitted without any testimony regarding the intent of either party.
Finally, the court noted that La. C.C. art. 2056 provides that in case of doubt that cannot be otherwise resolved, a provision of the contract must be interpreted against the party who furnished its text. The parties stipulated that the contract was drawn up by the attorney for Derek and his family; therefore, any doubt must be interpreted against Derek.
Interpreting the contract
Derek contends that the court's interpretation rendered the contract's provisions redundant and pointless. There would have been no need for the parties to distinguish his interests in P & M and in his retirement account if they were to be treated the same as any other community property. He maintains that it was clearly the parties' intent to reserve the fruits and revenues of their separate property.
Derek further argues that he used the words "his interest" because he owned stock in P & M along with other members of his family. He also could only deal with his interest in the retirement account. He contends that had the parties desired to treat the increases in value of his separate property as community property, then they would have simply left out the provision mentioning his interest in the retirement account and in P & M.
The contract never used specific language regarding a reservation of fruits or revenues. Nevertheless, this was clearly the parties' intent when executing the contract as the parties excluded certain property from the community of acquets and gains in the event of a divorce. The last sentence of the paragraph setting forth the matrimonial regime stated: "Only the remaining property owned by the parties will be considered community property in the event of a divorce." This sentence clearly qualified what property would be subject to the legal regime. Certainly the parties' intent was not to mention these specific separate properties, and then exclude only the increase in value of Anna's retirement account.
The trial court appeared to focus on the contract's use of the words "all of his interest" when describing Derek's separate property, while the contract used the words "all funds" when describing Anna's property. This is a distinction without a difference as the clear intent of the parties was to limit the scope and application of the legal regime to their property.
Derek owned a 30% interest in P & M. "All of his interest" distinguishes between his interest and the interests owned by his family members in their closely-held corporation. Such a phrase captures the total value of his interest, whether it increased or decreased during the marriage. Thus, "all of his interest" reflected any changes in value of P & M during the marriage.
Derek also used "all of his interest" to reserve any increase in value of his retirement account during the marriage. To construe the words as something other than a reservation of the civil fruits or revenues of that account as his separate property leads to absurd consequences. Under the terms of the contract, their property would be subject to the legal regime except for the specifically mentioned property. There would have been no need for Derek to specifically distinguish his retirement account if his intent was not to reserve its civil fruits and revenues.
*993 Based on the foregoing, we conclude that the trial court erred in finding that any increases in the value of P & M and of Derek's retirement account during the marriage belonged to the community. Accordingly, we reverse that part of the declaratory judgment decreeing that any increases in the value of P & M and of Derek's retirement account during the marriage were community property.
CONCLUSION
At Anna's costs, the declaratory judgment is reversed in part and the judgment of partition is vacated. This matter is remanded to the trial court for further proceedings.
DECLARATORY JUDGMENT REVERSED IN PART; JUDGMENT OF PARTITION VACATED; AND REMANDED.

Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art. 2051.

When the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that situation alone. La. C.C. art. 2052.