NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-425

FRUGE AQUAFARMS, INC.

VERSUS

ROBERT R. HICKS, JR.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2014-11142
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and John E. Conery, Judges.

AFFIRMED.

**Stephen A. Stefanski**
**Edwards, Stefanski & Zaunbrecher, L.L.P.**
**Post Office Drawer 730**
**Crowley, Louisiana 70527**
**(337) 783-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Robert R. Hicks, Jr.**

**Michael H. Landry**
**Landry, Landry & Landry**
**Post Office Box 1368**
**Crowley, Louisiana 70527**
**(337) 788-1850**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Fruge Aquafarms, Inc.**

**CONERY, Judge.**

This case involves a dispute over the terms of an agricultural and aqua-cultural lease (2010 Lease) between the landowner, Robert R. Hicks, Jr. (Hicks) and the tenants, Fruge Aquafarms, Inc. (Fruge) owned by Mark Rufus Fruge, II and his brother Michael G. Fruge. After a hearing on the merits on December 4, 2017 the trial court ruled in favor of Hicks finding that the 2010 Lease at issue was clear and unambiguous and terminated at midnight on January 1, 2015. An amended final judgment was signed on June 19, 2018 and filed on June 25, 2018. Fruge timely appealed. For the following reasons, we affirm the amended judgment of the trial court in its entirety.

## PROCEDURAL HISTORY

Fruge is in the business of "farming" rice, soybeans, wheat, and crawfish. Fruge entered into a lease covering approximately 232 acres with Hicks in 2005. There was a dispute between Fruge and Hicks over payment for the harvest of crawfish under the 2005 Lease. The parties were able to resolve that dispute and eventually signed the 2010 lease at issue. Section 2 of the 2010 Lease clearly stated that the term of the 2010 Lease commenced on January 1, 2010 and ended at midnight on January 1, 2015.

The Fruge petition alleged that Fruge was granted the authority to plant rice, soybeans, wheat, and crawfish "only during the term of this lease in keeping with the farming practices for the cultivation of crops in the locality of said property." [1]

The second paragraph of Section 10 of the 2010 Lease entitled "Condition and Surrender," contains the disputed terms of the 2010 Lease and provides, "Lessor agrees that if the **Lessor terminates the lease for any reason**, that the Lessee shall

---

[1] Crawfish is considered an aquacultural crop and was "farmed" by Fruge on the property in question in conjunction with the rice crop.

have until the following July of the successive year to complete the harvest of all crawfish." (Emphasis added.)

The Fruge petition contended that the terms cited in the second paragraph of Section 10 "memorializes the custom and practice in this venue regarding the farming of crawfish, and in fact reflected the timing of the plaintiff's crawfish harvest for the many years it has farmed the defendant's land." The customary "planting" for the "crawfish harvest" in a particular year traditionally begins in April or May when live crawfish are "seeded" in the acreage in question, with the actual "harvest" occurring between January and June of the following year. Fruge claims that under its interpretation of the 2010 Lease, it should have been able to harvest the crawfish crop it planted in April to July of 2014 through June of 2015.

The Fruge petition was prompted by correspondence dated October 15, 2014 from Hicks to Mark Fruge, indicating Hick's intention not to renew the 2010 Lease at its "expiration" on January 1, 2015. Hicks told Fruge not to make any preparations for "spring planting for any type of crop or crawfish activities in preparation for spring harvest or crawfishing, as there will be no other activity including crawfish harvesting after January 1, 2015." Fruge claims Hicks knew that he had already "planted" or "seeded" crawfish before October 15, 2014, and knew that Fruge, in accordance with traditional crawfish farming practices, intended to "harvest" the crawfish between January and June of 2015, after the lease had technically "terminated."

The Fruge petition alleged that Fruge attempted to resolve the dispute but was met with an October 30, 2014 letter from Hicks reiterating that Fruge would "not have permission to harvest crawfish on the tracts made subject to the lease," or be allowed on the property after January 1, 2015.

Fruge's petition then sought a preliminary injunction and specific performance of the 2010 Lease to allow Fruge to remain on Hicks' land between January and June of 2015 in order to "harvest" the crop of crawfish it had already planted and to use the equipment necessary to "complete that harvest by July 2015." In the alternative, if Fruge was not allowed to harvest the crawfish, then Fruge sought damages "concerning its preparation of a crawfish crop, which would be proven at trial."

Fruge also filed a petition for an injunction seeking to enjoin Hicks from barring Fruge from entering the leased property and harvesting the crawfish. The hearing on Fruge's preliminary injunction was held on January 5, 2015 and denied by the trial court in a judgment signed February 9, 2015.

On January 26, 2015, Hicks answered Fruge's petition for specific performance, and included a reconventional demand against Fruge seeking damages for Fruge's failure to accept the termination of the lease and vacate Hicks' property, as well as to pay Hicks the landlord's share of the rice crop in accordance with the 2010 Lease terms. Hicks claimed that the actions of Fruge constituted "tortious interference" with his right to negotiate a new farm lease for use of his property as of January 1, 2015.

Fruge answered Hicks' reconventional demand and filed its first amending and supplemental petition, changing the title of Fruge's original petition to "PETITON FOR SPECIFIC PERFORMANCE AND/OR DAMAGES."

Following a trial on the merits on June 27, 2016, the trial court issued a judgment dated July 11, 2016, in favor of Hicks, dismissing all claims made by Fruge against Hicks with prejudice. The trial court further awarded Hicks $23,000.00 in damages on his reconventional demand against Fruge, "as full satisfaction of the

3

crop revenue due and owing to Robert R. Hicks, Jr. for the 2014 rice crop pursuant to the provisions of the lease agreement which existed between the parties." All costs of the proceedings were assessed against Fruge.

## ORIGINAL APPEAL

Fruge timely appealed the judgment of the trial court dated July 11, 2016, dismissing its claims against Hicks with prejudice. However, Fruge did not appeal the damages awarded to Hicks in his reconventional demand against Fruge in the amount of $23,000.00 for the 2014 rice crop as per the provisions of the 2010 Lease. Therefore, that portion of the trial court's July 11, 2016 judgment is final.

The original appeal of this case resulted in a panel of this court vacating and remanding the remaining portion of the July 11, 2016 trial court's judgment denying Fruge relief in connection with the trial on the merits of its claims against Hicks. *Fruge Aquafarms, Inc. v. Robert R. Hicks, Jr.*, 16-1001 (La.App. 3 Cir. 5/3/17), 218 So.3d 1106. The panel's action was based on the failure of the parties to properly submit into evidence in the trial court at either the hearing on Fruge's injunction held on January 5, 2015 or the trial on the merits held on June 27, 2016, the initial 2005 Lease or the subsequent 2010 Lease. "Evidence filed into the record, but not introduced formally at trial, may not be considered by the appellate court." *Fruge*, 218 So.3d at 1111, (citing *David v. Cajun Painting Inc.*, 92-722 (La.App. 5 Cir 1/25/94), 631 So.2d 1167, *writs denied*, 94-972, 94-994 (La. 6/3/94), 637 So.2d 508).

The panel further found that no evidence was offered by either party at the two hearings and stated, "As there is no record of the petition for injunction purportedly heard on January 5, 2015[,] and no transcript of the hearing to establish what evidence, if any was considered, we must treat that proceeding as having no consequence." *Fruge*, 218 So.3d at 1111-12. Therefore, the panel found, "Evidence

4

not properly and officially offered and introduced into evidence cannot be considered, even it is physically placed in the record." *Fruge*, 218 So.3d at 1112 (citing *Meaux v. Miller*, 08-712 (La.App. 3 Cir. 12/10/08), 999 So.2d 281).

Accordingly, without the introduction of the 2010 Lease, "[t]here was no trial at all, only the discussion of the issues by the trial court and counsel, along with arguments of counsel." *Fruge*, 218 So.3d at 1113. The original trial court judgment in that appeal was vacated, and the case was remanded to the trial court for a hearing on the merits of Fruge's claims. *Id.*

## DISCUSSION OF THE TRIAL ON REMAND

Trial on the merits was held on December 4, 2017, as ordered by this court. The only issue on remand was the interpretation of the terms of the 2010 Lease executed on June 18, 2010 between the lessor, Hicks, and Fruge, the lessee. Certified copies of the prior 2005 Lease between the parties, as well as the 2010 Lease at issue were submitted into evidence as exhibits "Joint 1" and "Joint 2."[2] The previous panel of our court had discussed the pertinent portions of the 2010 Lease as follows:

> The lease involved six separately described tracts of land and was for the specific purpose of permitting Fruge to "use and occupy said premises for agricultural and aquacultural purposes only." The lease further provided Fruge the "authority to plant said premises in rice, soybeans, and wheat, and to farm crawfish, only during the term of this lease in keeping with the farming practices for the cultivation of crops in the locality of said property." The term of the lease as specifically stated therein "is five (5) years, commencing on January 1, 2010, and ending at midnight on January 1, 2015." As to rent, the lease provided that Fruge would pay "Twenty-five (25%) Percent of the gross revenue derived from the production of rice; and Fifteen (15%) Percent of the gross revenue derived from the production of soybeans" and further provided that Fruge would pay "FORTY AND NO/100 ($40.00) DOLLARS per acre per year for each acre on which crawfish operations are conducted." Further, Fruge agreed to "[r]emove any of

---

[2] The trial court allowed the proffered testimony of Mr. Mark Fruge at the hearing and a proffered affidavit from Mr. Michael Fruge was submitted after the hearing, pursuant to La.Code Civ.P. art. 1636. However, neither proffer was considered by the trial court in its ruling and will not be considered by this court on appeal. *See Derouen v. Nelson*, 09-647 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079.

its crops from the leased premises prior to the expiration of this lease, it being agreed between the parties that upon Lessee's failure to do so, title thereto shall thereupon vest in Lessor and Lessee shall forfeit any rights therein."

*Fruge*, 218 So.3d at 1108.

The second paragraph of Section 10 of the 2010 Lease entitled "CONDITION OF SURRENDER" is the basis of the dispute between the parties and provides, **"Lessor agrees that if the Lessor terminates the lease for any reason, that the Lessee shall have until the following July of the successive year to complete the harvest of all crawfish."** (Emphasis added.)

The trial court issued its ruling on the record and found once again in favor of Hicks as follows:

> The Court: Okay. So as I ruled before, I certainly, can see how Mr. Fruge and his brother believed that they had the right to harvest his crawfish on their interpretation of the lease. The problem, as I had said before, the lease speaks for itself. The lease terminated on January – actually, December 31, 2014. Certainly and unambiguously, by the terms of the agreement, it states that. The provision that came forth that caused the controversy talked in terms of the lessor terminating the lease. For me, **in my interpretation, is a termination of the lease is different than the ending of a lease**. And I believe the way that I have to interpret, and the way it's written, would be that **if the lessor terminated the lease prior to its ending, that the lessee would have the right to harvest their crops.**

> In this situation, the lease ended and the lessee should have known that the lease was over. Obviously, they were confident that they weren't going to get an additional lease based on the relationship between the lessor and themselves. And I think, again, I'm not faulting them for believing that, but they believed it, and it's not what the law for me provides. The Third Circuit may interpret it differently, but I, certainly, see no ambiguity to the lease. It terminates on that date, and I do not believe that language gives them an additional six (6) months to go beyond the end of the lease. . . .

> For those reasons, the Court declares the lease to have been terminated January 1 or December 31, which ever it is, as per the written lease. And I'll sign a judgment on presentation, which should be circulated to all parties.

(Emphasis added.)

The initial formal judgment was signed by the trial court on January 22, 2018, and filed on January 26, 2018, from which Fruge timely appealed. However, this court then issued a rule to show cause on June 11, 2018 to appellant as to why the appeal should not be dismissed due to the lack of "proper decretal language" in the trial court's January 22, 2018 judgment, rendering "this matter improperly before us on review." We required a response by June 26, 2018.

Fruge timely responded with an amended judgment signed June 19, 2018 and filed on June 25, 2018, which contained the proper decretal language necessary for this court to maintain jurisdiction over Fruge's appeal.

**ASSIGNMENT OF ERRORS**

1. The trial court committed reversible error by finding the contract at issue was not ambiguous and/or that it did not lead to absurd consequences, and therefore ruling all extrinsic evidence of the parties' intent inadmissible.

2. The trial court committed reversible error by ruling that the lease at issue did not allow Petitioner/Appellant[,] Fruge Aquafarms, Inc. to harvest the 2014 crawfish crop through July of 2015.

3. The Trial Court committed reversible error by excluding the testimony of Mike Fruge as to the damages sustained by Petitioner/Appellant, Fruge Aquafarms, Inc.

**LAW AND DISCUSSION**

*Standard of Review*

"When a trial court's interpretation of a contract is not based upon any factual findings, but, rather, is based upon a review of the contract's language, the manifest error standard of review does not apply." *Derouen v. Nelson*, 09-467, p. 3 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079, 1082. *See also Campbell v. Evangeline Par. Police Jury*, 14-1301 (La.App. 3 Cir. 5/6/15), 164 So.3d 408, *writ denied*, 15-1067 (La. 9/11/15), 176 So.3d 1043. A review of the record indicates that the trial court allowed a proffer of the testimony of Mark Fruge and a proffer of an affidavit of

Michael Fruge in which they explained their interpretation of Section 10 of the 2010 Lease and their claimed damages.

Although the trial court discussed Fruge's interpretation of the 2010 Lease provisions in its reasons, the trial court based its decision on the plain wording of the contract and did not consider the evidence introduced by proffer. Accordingly, we will conduct a *de novo* review in this case. *See Derouen,* 32 So.3d 1079.

***Contract Interpretation***

Louisiana Civil Code Article 1848 provides in pertinent part, "Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature."

The Louisiana Supreme Court in *Clovelly Oil Co., LLC v. Midstates Petroleum Co. LLC*, 12-2055, pp. 5-6 (La. 3/19/13), 112 So.3d 187, 192 (footnotes omitted) (emphasis added), provided the general principles of contract interpretation a court must apply as follows:

> "Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. **"Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties."** However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be

8

interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.

### *Assignments of Error One and Two*

In assignment of error one, Fruge claims that the trial court committed reversible error by finding that the portion of the contract at issue was not ambiguous, thereby excluding all extrinsic evidence. In assignment of error two, Fruge claims that the trial court's ruling kept it from harvesting the 2014 crawfish crop through July of 2015 even though Fruge had fully planted the crop and incurred all the expenses incidental thereto. We will consider these issues together.

As previously discussed, the 2010 Lease at issue between Hicks and Fruge, Section 2 provided, "The term of this lease is five (5) years, commencing on January 1, 2010, and ending at midnight on January 1, 2015." The portion of the lease at issue, Section 10, paragraph two provides, "Lessor agrees that if the **Lessor terminates the lease for any reason**, that the Lessee shall have until the following July of the successive year to complete the harvest of all crawfish." (Emphasis added.)

The trial court in its amended judgment dated June 19, 2018, found that the 2010 Lease between the parties was clear and unambiguous as to its date of termination. The Lessor, Hicks, did not terminate the lease. The lease simply ended at midnight on January 1, 2015 by its clear terms.

The trial court in its oral reasons issued on December 4, 2017, again stated that the contested provision "talked in terms of the lessor terminating the lease." The trial court found a distinction between the "ending of a lease" and the language in the contested provision which protected the lessee if "**the lessor terminated the lease prior to its ending**." (Emphasis added.)

9

The trial court found that this clause was not ambiguous. We agree. The 2010 Lease, by its plainly worded terms, ended at midnight on January 1, 2015, and nothing in the second paragraph of Section 10, provides for an additional six months that extends the 2010 Lease beyond the end of the stated term in order for Fruge to "harvest" the crawfish crop it allegedly "planted" in 2014.

Louisiana Civil Code Article 2056 provides, "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." Fruge's attorney prepared the lease provisions at issue. If there is an ambiguity, and we find none, any ambiguity would be construed against Fruge, as its attorney proposed the language in question. The 2010 Lease as written "terminated" at midnight on January 1, 2015 and was not "terminated by the Lessor." Moreover, if Fruge had any doubts as to whether it would be allowed to harvest the 2015 crawfish crop between January and June of 2015, it could have and should have clarified that issue before it seeded the crawfish crop in 2014.

Counsel for Fruge equates the action or inaction by Hicks "allowing" Fruge to plant but not harvest the crawfish crop as equivalent to an unlawful termination or unjust enrichment. However, the trial court found that Fruge **planted the crawfish** knowing full well the 2010 Lease terminated by its own terms before Fruge would be able to harvest the crop.

After a *de novo* review of the record, we find no error in the trial court's ruling. We find that Fruge's assignments of error one and two have no merit.

### Assignment of Error Three

Having found that the trial court correctly interpreted the 2010 Lease at issue, Fruge's assignment of error three based on the exclusion of the proffered evidence is moot.

## CONCLUSION

Considering the foregoing reasons, we affirm the trial court's amended judgment dated June 19, 2018 in favor of Robert R. Hicks and against Fruge Aquafarms, Inc. in its entirety, thereby dismissing any and all claims made by Fruge Aquafarms, Inc. against Robert R. Hicks with prejudice. All costs of this appeal are assessed to Fruge Aquafarms, Inc.

**AFFIRMED.**

**This opinion is <u>NOT DESIGNATED FOR PUBLICATION.</u> <u>Uniform Rules - Courts of Appeal, Rule 2-16.3</u>**